**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

IRA REYNOLDS and, PATRICIA
BELL individually and on behalf of
all others similarly situated,                    JURY TRIAL DEMANDED

        *Plaintiffs*,

      v.                                        Case No.

WAL-MART STORES, INC.,

        *Defendant.*

## CLASS ACTION COMPLAINT

Plaintiffs Ira Reynolds and Patricia Bell ("Plaintiffs"), individually, and on behalf of all others similarly situated persons, through their undersigned attorneys, bring this lawsuit against defendant Wal-Mart Stores, Inc., (herein after "Defendant" or "Walmart").

### SUMMARY OF THE CASE

1.      At all times relevant to the matters alleged in this Complaint, Defendant has made, and continues to make, affirmative misrepresentations and/or omissions regarding its Great Value 100% Cranberry Pomegranate Juice ("GV Pomegranate Juice").  Defendant sells a variety of products, including two juices under its "Great Value" brand, Great Value 100% Apple Juice ("GV Apple Juice") and Great Value 100% Cranberry Pomegranate Juice ("GV Pomegranate Juice"). Wal-Mart positions these two similarly-packaged juices close to each other, allowing consumers to view both, while charging $1.88 for GV Apple juice and a premium $2.78 for GV Pomegranate Juice.

2.      Walmart's Great Value product line is "not only the biggest brand Wal-Mart carries, it's the biggest grocery brand in the entire country"[1] with an estimate of $10 billion in annual sales in 2009,[2] and a large fraction of those sales attributed to Great Value beverage sales.

3.      Walmart markets a juice blend sold with a label that, in describing the contents, displays the words "100% Juice Cranberry Pomegranate" with far more prominence than other words on the label that show the juice to be a blend of five juices (hereinafter referred to as "GV Pomegranate Juice").  In truth, the Walmart's GV Pomegranate Juice product contains very little pomegranate juice concentrate when compared to the apple juice and white grape juice concentrates. Far less than the 100% cranberry pomegranate juice that is predominately advertised on the front of their label.

4.      Defendant knowingly and purposefully failed to disclose to its consumers that the primary ingredients in GV Pomegranate Juice are actually composed of cheap apple and grape juice.  To this day, Defendant has taken no meaningful steps to clear up consumers' misconceptions regarding its product.

5.      As a consequence of Defendant's unfair and deceptive practices, Plaintiffs and members of the Class have purchased GV Pomegranate Juice under the false impressions that, by drinking Defendant's product they would be enjoying the healthful and nutritional benefits associated with a product they believe at least primarily contains pomegranate juice.

---

[1] Boyle, M. (2009, March 16). *Wal-mart Gives Its Store Brand a Makeover*. Retrieved July 11, 2014, from Bloomberg Businessweek:
http://www.businessweek.com/bwdaily/dnflash/content/mar2009/db20090316_585298.htm#

[2] Neff, J. (2009, September 7). *Why Walmart's Great Value Changes the Game*. Retrieved July 11, 2014, from Ad Age: http://adage.com/article/news/walmart-s-store-brand-great-game/138762/

6.      Significantly, **each** consumer has been exposed to the **same** material misrepresentations and/or omissions which are prominently displayed on the product packaging for the GV Pomegranate Juice prior to purchasing the product.

7.      Pomegranate juice is a rich source of antioxidants, nutrients that aid in the protection of cell damages caused by free radicals. A list of the possible health benefits of pomegranate juice include:

"Improve[ment of] blood flow to the heart in people with ischemic coronary heart disease (CHD). In a study of 45 people with CHD and myocardial ischemia (in which not enough blood gets to the heart muscle), participants who drank about 8 fluid ounces of pomegranate juice daily for 3 months had less ischemia during a stress test. Study participants who did not drink the juice, meanwhile, had evidence of more stress-induced ischemia. The study noted no negative effects to drinking pomegranate juice (even on blood sugar levels or body weight). Lead researcher, Dean Ornish, MD, believes pomegranate juice may even be able to help prevent heart disease in people who do not already have it.

Stop[ing] plaque from building up in blood vessels - in other words, it may have an anti-atherogenic effect. The antioxidants in the juice may help keep cholesterol in a form that is less damaging, and may also reduce plaque that has already built up in vessels, according to Collins. Pomegranate juice was shown to have potent anti-atherogenic effects in healthy humans and in mice with plaque buildup -- possibly due to its antioxidative properties, researchers from Israel recently concluded. In their study of healthy male volunteers, pomegranate juice was shown to decrease the likelihood of LDL "bad" cholesterol to form plaque. Another Israeli study showed a decrease in the development of atherosclerosis in mice whose diets were supplemented with pomegranate juice.

Slow[ing of] prostate cancer growth. Antioxidants are known to help prevent and repair DNA damage that can lead to cancer. "Pomegranate juice won't fend off cancer by itself, but studies suggest it may be a wonderful addition to the balanced, plant-based diet recommended by the American Institute of Cancer Research," says Collins. Men who have already had preliminary treatment for prostate cancer may benefit from a daily dose of pomegranate juice. The juice appeared to suppress the growth of cancer cells and the increase in cancer cell death in lab testing, according to research from UCLA. Allan Pantuck, MD, said in an email interview that he guesses a combination of elements in pomegranates -

- rather than any single component -- is probably responsible for these health effects."[3]

8.     Despite the minuscule amount of pomegranate and cranberry juices in the GV Pomegranate Juice, the front label of the Walmart product displays the words "100% Cranberry Pomegranate Juice" in all capital letters, on two separate lines.

9.     Below those words, Walmart placed the phrase "flavored juice blend" in much smaller type.

10.     And below that phrase, in still smaller type, were the words "from concentrate with added ingredients"—and, with a line break before the final phrase— "and other natural flavors."

11.     Walmart's GV Pomegranate Juice misleads consumers into believing the product consists predominantly of cranberry and pomegranate juice when it in fact consists predominantly of less expensive apple and grape juices.

12.     Under federal and Florida state law, products such as Walmart's GV Pomegranate Juice are "misbranded" if their "labeling is false or misleading in any particular," or if it does not contain certain information on its labeling. *See* 21 U.S.C. § 343(a); Florida Food Safety Act § 500 et seq.

13.     Further, any violation of the Florida Food Safety Act also constitutes a violation of Florida's Consumer Protection Statues §501.201-§501.213, Florida Deceptive and Unfair Trade Practice Act, Breach of Express Warranty; Merchantability; Usage of Trade Pursuant to §672.314 Florida Statues, Breach of Implied Warranty pursuant to Uniform Commercial Code §2-314 and Unjust Enrichment. In this action, Plaintiffs asserts claims under these state statutes,

---

[3] Magee, E. (2006, September 8). *Pomegranate Power: Colorful, delicious fruit packs a powerful antioxidant punch*. Retrieved July 11, 2014, from WebMD: http://www.webmd.com/food-recipes/features/pomegranate-power

as well as under common law.

14.     For the reasons stated herein, Walmart's GV Pomegranate Juice sold in the United States are misbranded and illegal.

15.     Plaintiffs now seeks to stop Defendant's unlawful conduct.

## PARTIES

16.     Plaintiffs Ira Reynolds and Patricia Bell are residents of this district.  During the class period, Plaintiffs were exposed to and saw Defendant's advertising and packaging claims, purchased GV Pomegranate Juice in reliance on these claims, and suffered injury in fact and lost money as a result of the unfair and deceptive trade practices described herein.

17.     Plaintiffs respectively purchased more than $25.00 worth of Walmart's GV Pomegranate Juice in reliance upon, *inter alia*, the labeling, packaging, advertising and/or other promotional materials which were prepared and approved by Defendant and its agents and disseminated through its packaging, advertising and marketing, and/or through local and national advertising media including Defendant's Internet web-sites media, and in store advertisements, containing the misrepresentations and/or omissions alleged herein, within the four years preceding the filing of this action (the "Class Period")

18.     Defendant, Wal-Mart Stores, Inc., is a Delaware corporation conducting business within Florida and this Judicial District.

19.     Walmart markets and sells GV Pomegranate Juice described herein under its brand name, Great Value. Walmart markets and sell GV Pomegranate Juice nationwide using its name, Great Value, including in this State, district, and division.

## JURISDICTION AND VENUE

20.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)

because this is a class action in which: (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) members of the class of Plaintiffs are citizens of a State different from the Defendant; and (3) the number of members of all proposed Plaintiffs in the class, in the aggregate, is greater than 100.

21.     The Court has personal jurisdiction over Defendant because a substantial portion of the wrongdoings alleged herein occurred in Florida. Defendant also has sufficient minimum contacts with Florida, and has otherwise intentionally availed itself of the markets in Florida through the promotion, marketing, and sale of products sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 139(b)(2) and (3) because a substantial part of the events or omissions giving rise to these claims occurred in this District, a substantial part of the property that is the subject of this action is situated in this District, and Defendant is subject to the Court's personal jurisdiction with respect to this action.

## FACT RELEVANT TO ALL CLAIMS

**Walmart's GV Pomegranate Juice is misbranded and illegal**

23.     All containers of Walmart's GV Pomegranate Juice sold in the United States are misbranded and illegal.

24.     Defendant's deceptive sale practices of GV Pomegranate Juice constitutes violations of the FDCA, the Florida Food Safety Act, Florida's Consumer Protection Statues §501.201-§501.213, Florida Deceptive and Unfair Trade Practice Act pursuant to ("FDUTPA"), Breach of Express Warranty; Merchantability; Usage of Trade Pursuant to §672.314 Florida Statues, Breach of Implied Warranty pursuant to Uniform Commercial Code §2-314, Unjust Enrichment and Civil Theft.

6

25.     It has become recently well-known that pomegranate juice is high in powerful antioxidants, recognized for years to be helpful in maintaining health and preventing disease. Pomegranate juice has very high levels of unique polyphenols[4], potent antioxidants that are especially effective at neutralizing free radicals[5], helping to prevent cell and tissue damage that can lead to dysfunctions and diseases associates with aging. Based on laboratory and human pilot studies, the juice of the pomegranate has been effective in reducing heart disease risk factors, including LDL oxidation, macrophage oxidative status, and foam cell formation, all of which are steps in atherosclerosis and cardiovascular disease. Pomegranate juice has also been shown to reduce systolic blood pressure by inhibiting serum angiotensin-converting enzyme, may inhibit viral infections, and may also have antibacterial effects against dental plaque.

26.     The pomegranate is considered a "wonderful fruit" or "super fruit" and has become a popular drink among health conscious consumers because of its known high antioxidant capacity. Pomegranates are also highly protective to the cardiovascular system and nervous system and are among the fruits with the highest antioxidant activity.

27.     With the nutritional and health benefits of pomegranate juice becoming widely known, consumer demand for pomegranate juice has increased rapidly. It was this enormous new market that Defendant hoped to tap with the sale of its GV Pomegranate Juice product.

**The Label of Walmart's GV Pomegranate Juice**

28.     Even though GV Pomegranate juice contains very little pomegranate juice,

---

[4] Polyphenols are a class of phytochemicals found in plants. Phenol is a kind of molecule, a carbon-based chemical structure, and many of them bound together form a polyphenol.

[5] Free radicals are atoms or molecules in one's body with an unpaired electron making them highly unstable. Normally, electrons come in pairs, and therefore the free radicals collide with other molecules in an attempt to steal an electron, which in turn, may start a chain reaction, causing damage to cell membranes and DNA through a process known as oxidative stress. Indeed, free radicals are able to aggressively destroy healthy cells and have been linked to serious health threats, such as cancer and heart disease.

Walmart made a tactical marketing and/or advertising decision to create a deceptive and

misleading label with many elements not required by state of federal regulation. For example,

despite the fact that apple and grape juice are the predominant juices in its product, Defendant

decided to give this juice product the brand name of "Cranberry Pomegranate" juice on the front

label, and to prominently display a pictures of pomegranates, among other misleading elements.

The front label on each juice product substantially appears as follows:



29.     Walmart could have given the product many other names. For example, Walmart

could have named its product "Apple Grape" juice which are the two primary juices in its

product.

30.     As shown, above Walmart's decision to name its product "Cranberry

Pomegranate," rather than, for example, "Apple Grape," demonstrates Walmart's intention to focus consumers on the pomegranate in the product, while downplaying the cheaper juices it primarily contains.

31.     By characterizing this product as "Cranberry Pomegranate," and including the prominent display of pomegranates on the front label, Walmart misled Plaintiffs and other consumers, who reasonably expect that the juice product actually consists primarily of pomegranate and cranberry juices. It is this highly suggestive marketing and packaging, and misleading presentation of Defendant's product which lead consumers, including Plaintiffs, to believe they are getting the high quality juices that they are purchasing.

32.     Plaintiffs' claims that Walmart's product label is misleading and deceptive do not seek to challenge the product's formal name and labeling in areas for which the Food and Drug Administration ("FDA") has promulgated regulations implementing the Federal Food Drug and Cosmetic Act ("FDCA"). Plaintiffs' claims do not seek to contest or enforce the FDCA or FDA regulation requirements. Nor do Plaintiffs seek an interpretation of the FDA regulations. Instead, Plaintiffs' claims are predicated on the fact that the naming and labeling are misleading and deceptive even if they comply with the minimum requirements set forth by the FDA regulations, as the FDA regulations simply set a "floor," or "minimum" requirements.  Indeed, compliance with the minimum requirements is necessary, but is not sufficient to determine if a product's label is false and misleading, and simply does not provide a shield from liability. *See e.g., Wyeth v. Levine*, 129 S. Ct. 1187, 1202 (2009).

33.     Moreover, in a similar false advertising lawsuit pending in the Central District – *POM Wonderful LLC v. The Coca Cola Company*, Case No. CV-08-06237 SJO – POM, a major competitor has alleged that Coca Cola is misleading consumers and damaging competitors by

naming, labeling, packaging, marketing and advertising of a similar juice product at issue herein (the Pomegranate Blueberry Juice) as "Pomegranate Blueberry" juice, despite the fact that it contains very little pomegranate juice or blueberry juice. Based on this conduct, POM has brought claims under Section 17200 and 17500 of the California Business & Professions Code. On February 10, 2009, Judge S. James Otero permitted POM's Section 17200 and 17500 claims to the extent that they are identical to the FDCA and its implementing FDA regulations. *See* judge Otero's Order Granting in Part, Denying in Part Defendant's Motion to Dismiss, slip op. at 11 (C.D. Cal. Feb. 10, 2009).

34.     Plaintiffs' state law claims are aimed at the features of the naming and labeling which are voluntary, and not required by the FDA regulations, which Walmart selected in order to maximize the label's deceptive impact upon Plaintiffs and other consumers. Indeed, FDA regulations did not require Defendant to name its product "Cranberry Pomegranate," as opposed to "Apple Grape" or myriad of other options. Defendant made that decision because of its marketing strategy. Similarly, FDA regulations did not require Defendant to place a pomegranate image on its label in conjunction with the name "Cranberry Pomegranate." Defendant made that decision because of its marketing strategy. Indeed, Defendant's marketing misleads consumers into believing that its product primarily contains pomegranate and cranberry juice. Defendant's marketing campaign is designed to cause consumers to buy GV Pomegranate Juice as a result of this deceptive message, and Defendant has succeeded.

35.     Plaintiffs are informed and believe, and on that basis allege, that Defendant has also engaged in other forms of advertising and/or marketing of its GV Pomegranate Juice, including print advertisements, point-of-purchase displays, and national in-store sampling programs. Through the uniform deceptive and misleading advertising and marketing campaign,

Walmart misleads consumers to believe that the primary ingredient in the product are pomegranate and cranberry juices.

36.     As a result of this campaign, the average consumer, unaware that the product actually contains very little pomegranate and cranberry juices, has purchased the product believing that the product, is derived primarily from these two juices. The primary ingredients of the product are actually apple and grape juice, which are much less expensive than, and do not contain as many antioxidants as, pomegranate juice.

37.     Moreover, consumers' confusion is reasonable given that some companies are selling juices advertised as pomegranate juice which truly are composed 100% (or at least primarily) of those juices. For example Plaintiffs allege that R.W. Knudson Just Pomegranate, POM Wonderful Pomegranate and Odwalla PomaGrand Pomegranate Juice are juice products that actually contain primarily pomegranate juice.

38.     Accordingly, Defendant's representations regarding the GV Pomegranate Juice are false, misleading and/or fail to disclose material facts. Defendant knew or should have known and/or was reckless in not knowing and disclosing that the GV Pomegranate contained very little pomegranate juice. Defendant knew or should have known that its representations concerning the juice were likely to deceive consumers into believing they were purchasing primarily pomegranate and cranberry juice.

39.     Defendant knowingly and intentionally sold these misbranded products to consumers (including Plaintiffs) with the intent to deceive them.

40.     Plaintiffs purchased Walmart's GV Pomegranate Juice within the Class Period.

41.     Walmart's Great Value Division markets a juice blend sold with a label that, in describing the contents, displays the words "cranberry pomegranate" with far more prominence

than other words on the label that show the juice to be a blend of five juices (hereinafter referred to as "GV Pomegranate Juice").  In truth, the Walmart's product contains the following ingredients in order from the most prevalent to the least prevalent: water, white grape juice concentrate, apple juice concentrate, plum juice concentrate, cranberry juice concentrate, pomegranate juice concentrate, natural flavors, fumaric acid, and ascorbic acid. Far less than the 100% cranberry pomegranate juice that is predominately advertised on the front of their label. Below is a picture of the list of ingredients:



42.     Despite the minuscule amount of cranberry and pomegranate juices in GV Pomegranate Juice, the front label of the Walmart product displays the words "cranberry pomegranate" in all capital letters, on two separate lines.  Below those words, Walmart placed the phrase "flavored juice blend" in much smaller type.  And below that phrase, in still smaller type, were the words "from concentrate with added ingredients".  See above picture of product.

43.     Walmart's GV Pomegranate Juice misleads consumers into believing the product consists predominantly of cranberry and pomegranate juice when it in fact consists predominantly of less expensive apple and grape juices.

44.     Walmart's GV Pomegranate Juice retails for $2.78 while their virtually identical Great Value Apple Juice product retails for $1.88, with over a 48% price differential. Below is a picture of Walmart's Apple Juice product:



45.     Because Walmart's GV Pomegranate Juice containers falsely represents that they predominantly contain pomegranate and cranberry juices, they are misbranded under both the FDUPTA and the Florida Food Safety Act.

46.     Defendant knowingly and intentionally failed to include statements on containers of Walmart's GV Pomegranate Juice regarding the true ratios of the juices contained in GV Pomegranate Juice.

47. Had Plaintiffs known that Walmart's GV Pomegranate Juice was predominately apple and grape juice, they would not have purchased Walmart's GV Pomegranate Juice, but rather a less expensive alternative such as Great Value Apple Juice.

48. Had Plaintiffs known that Walmart's GV Pomegranate Juice was an illegally sold product, they would not have purchased Walmart's GV Pomegranate Juice.

49. Plaintiffs' reliance was reasonable.

50. A reasonable consumer would have been misled by the Defendant's actions.

51. With respect to Walmart's GV Pomegranate Juice, Defendant has violated the FDCA and regulations promulgated thereunder.

52. As a result, Defendant has violated the Florida Food Safety Act.

53. *Inter alia,* Defendant has specifically violated the following Florida Food Safety Act provisions.

54. Defendant has violated Florida Food Safety Act § 500 et seq., which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product.

55. Defendant has violated Florida Food Safety Act § 500 et seq., which makes it unlawful to manufacture, sell, deliver, hold, or offer to sell any falsely advertised food.

56. Defendant has violated Florida Food Safety Act § 500 et seq., which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.

57. Defendant has violated Florida Food Safety Act § 500 et seq., which makes it unlawful for any person to misbrand any food.

58.     Defendant has violated Florida Food Safety Act § 500 et seq., which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer any such food for delivery.

59.     Defendant has violated Florida Food Safety Act § 500 et seq., because their labeling is false and misleading in one or more ways.

60.     Defendant has violated Florida Food Safety Act § 500 et seq., because their labeling fails to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and the regulations promulgated thereunder.

61.     Defendant has violated Florida Food Safety Act § 500 et seq., because their labeling fails to conform to the requirements for nutrients content and health claims set forth in 21 U.S.C. § 343(r) and the regulations promulgated thereunder.

**Purchasers of Misbranded GV Pomegranate Juice Have Been Injured**

62.     Plaintiffs read and reasonably relied on the labels as described herein when buying Walmart's GV Pomegranate Juice.

63.     Plaintiffs relied on Defendant's labeling, and based and justified the decision to purchase Walmart's GV Pomegranate Juice in substantial part, on these labels.

64.     At point of sale, Plaintiffs did not know, and had no reason to know, that Walmart's GV Pomegranate Juice contained predominately apple juice and white grape juice concentrate despite being named "cranberry pomegranate" juice blend.

65.     At point of sale, Plaintiffs did not know, and had no reason to know, that Walmart products were unlawful and misbranded.

66.     Walmart's GV Pomegranate Juice retails for $2.78 while their virtually identical Great Value Apple Juice product retails for $1.88, with over a 48% price differential.

67.     Had Plaintiffs been aware of these material facts, they would not have bought Walmart's GV Pomegranate Juice.

68.     As a result of Defendant's unlawful misrepresentations, Plaintiffs and millions of others in Florida and throughout the United States purchased Walmart's GV Pomegranate Juice.

69.     Defendant's labeling as alleged herein is false and misleading and was designed to increase sales of the Walmart's GV Pomegranate Juice.

70.     Defendant's misrepresentations are part of its systematic labeling practice.

71.     A reasonable person would attach importance to Defendant's misrepresentations in determining whether to purchase Walmart's GV Pomegranate Juice.

72.     Plaintiffs' purchase of Walmart's GV Pomegranate Juice damaged them.

73.     Such purchases damages Plaintiffs because, *inter alia*, misbranded products are illegal and have no economic value.

74.     Such purchases damages Plaintiffs because, *inter alia,* Plaintiffs had cheaper alternatives available and paid an unwarranted premium for Walmart's GV Pomegranate Juice.

75.     All purchasers of Walmart's GV Pomegranate Juice were injured.

## CLASS ACTION ALLEGATIONS

76.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following class:

> All persons nationwide who, within the Class Period, purchased Walmart's GV Pomegranate Juice called "cranberry pomegranate" juice blend (the "Class").

77.     Alternatively, Plaintiffs brings this action on behalf of the following class: All persons in Florida who, within the Class Period, purchased Walmart's GV Pomegranate Juice called "cranberry pomegranate" juice blend.

78.     The following persons are expressly excluded from the Class: (1) Defendant and their subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

79.     This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

80.     **Numerosity:** Based upon Defendant's publicly available sales data with respect to Walmart, it is estimated that the Class numbers is potentially in the millions, and the joinder of all Class members is impracticable.

81.     **Common Questions Predominate:** The action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members. Thus, proof of a common set of facts will establish the right to each Class member to recover. Questions of law and fact common to each Class member include, for example:

a.      Whether Defendant engaged in unfair, unlawful or deceptive business practices by failing to properly package and label Walmart's GV Pomegranate Juice sold to consumers;

b.      Whether the food products at issue were misbranded or unlawfully packaged and labeled as a matter of law

c.      Whether Defendant made unlawful and misleading claims regarding the content of Walmart's GV Pomegranate Juice;

d.      Whether Defendant violated Florida's Consumer Protection Statues §501.201- §501.213, Florida Deceptive and Unfair Trade Practice Act, Breach of Express Warranty; Merchantability; Usage of Trade Pursuant to §672.314 Florida Statues, Breach of Implied

Warranty pursuant to Uniform Commercial Code §2-314, the Florida Food Safety Act; or the FDCA and regulations promulgated thereunder;

      e.      Whether Plaintiffs and the Class are entitled to equitable and/or injunctive relief;

      f.      Whether Defendant's unlawful, unfair and/or deceptive practices harmed Plaintiffs and the Class; and

      g.      Whether Defendant were unjustly enriched by their deceptive practices.

82.    **Typicality:** Plaintiffs' claims are typical of the claims of the Class because Plaintiffs purchase Defendant's products during the Class Period. Defendant's unlawful, unfair, and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of each member of the Class were caused directly by Defendant's wrongful conduct. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members and a based on the same legal theories.

83.    **Adequacy:** Plaintiffs will fairly and adequately protect the interests of the Class. Neither Plaintiffs nor their counsel have any interests that conflict with or are antagonistic to the interests of the Class members. Plaintiffs has retained highly competent and experienced class action attorneys to represent their interests and those of the members of the Class. Plaintiffs and their counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiffs and their counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharged those duties by vigorously seeking the maximum possible recovery for the Class.

84.   **Superiority:** There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class members' rights and the disposition of their interests through actions to which they are not parties. Class Action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would create. Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

85.   The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate injunctive or equitable relief with respect to the Class as a whole.

86.   The prerequisites to maintaining a class action pursuant to Fed R. Civ. P. 23(b)(3) are met as questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

87.     Plaintiffs and their counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

88.     Plaintiffs are members of the Class they seeks to represent.  Plaintiffs' claims are typical of the Class members' claims. Plaintiffs will fairly and adequately protect the interests of the Class in that Plaintiffs' claims are typical and representative of the Class.

89.     There are no unique defenses which may be asserted against Plaintiffs individually, as distinguished from the Class. The claims of Plaintiffs are the same as those of the Class.

90.     No conflicts of interest exist between Plaintiffs and the other Class members. Plaintiffs have retained counsel that is competent and experienced in complex class action litigation. Plaintiffs and their counsel will fairly and adequately represent and protect the interests of the Class.

91.     This class action is superior to any other method for the fair and efficient adjudication of this dispute.

## CAUSES OF ACTION

### COUNT I

### VIOLATION OF FLORIDA CONSUMER PROTECTION STATUTES §501.201- §501.213, FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

92.     Plaintiffs realleges and incorporates by reference the allegations contained in paragraphs 1 through 91 above as if fully set forth herein.

93.     Defendant's conduct constitutes unlawful business acts and practices.

94.     Defendant deceptively sold Walmart's GV Pomegranate Juice in Florida and throughout the United States during the Class Period.

95.     Defendant preyed on consumer's preference for products with antioxidant qualities by deceptively marketing their GV Pomegranate Juice; knowing that consumers would be purchasing their product based on the belief that they would be receiving the antioxidant benefits from the Defendant's product.

96.     Florida Consumer Protection Statue §501.204 (2012) prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising. For the reasons discussed above, Defendant had engaged in unfair, deceptive, untrue and misleading advertising in violation of Florida Consumer Protection Statute §501.

97.     The Florida Deceptive and Unfair Trade Practices Act also prohibits any "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in conduct of any trade or commerce." Defendant has violated §501.204's prohibition against engaging in unlawful acts and practices by, *inter alia,* making the representations and omissions of material facts, as set forth more fully herein, and violating 21 U.S.C. §342, 21 U.S.C. §343, 21 U.S.C. §379aa-1, 15 U.S.C. §45 (a)(I), 49 Fed. Reg. 30999 (Aug. 2, 1984), Federal Food, Drug and Cosmetic Act §402(f)(1)(A), and the common law.

98.     Plaintiffs and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices. Such conduct is ongoing to this date.

99.     Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of The Florida Deceptive and Unfair Trade Practices Act §501.201-§501.213 *et seq.* in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributed to such conduct.

100.    As stated in this Complaint, Plaintiffs allege violations of consumer protection, unfair competition, and truth-in-advertising laws in Florida resulting in harm to consumers. Defendant's conduct constitutes violations of the public policies against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers as proscribed by Florida Deceptive and Unfair Trade Practices Act §501.201-§501.213.

101.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

102.    Defendant's claims, nondisclosures and misleading statements, as more fully set forth above and collectively as a scheme, were false, misleading and likely to deceive the consuming public within the meaning of Florida Deceptive and Unfair Trade Practices Act.

103.    Defendant's conduct caused and continues to cause substantial injury to Plaintiffs and the other Class members. Plaintiffs and Class members have suffered injury in fact and have lost money as a result of Defendant's unlawful, unfair and fraudulent conduct.

104.    Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

105.    Plaintiffs, on behalf of themselves, and all others similarly situated, and the general public, seek restitution and disgorgement of all money obtained from Plaintiffs and the members of the Class collected as a result of unfair competitions, an injunction prohibiting Defendant from containing such practices, corrective advertising, including providing notification of the product's false claims, and all other relief this Court deems appropriate, consistent with Florida Deceptive and Unfair Trade Practices Act.

## COUNT II

## BREACH OF EXPESS WARRANTY; MERCHANTABILITY;
## USAGE OF TRADE PRUSUANT TO § 672.314 FLORIDA STATUTES

106.    Plaintiffs realleges and incorporates by reference the allegations contained in paragraphs 1 through 91 above as if fully set forth herein.

107.    Plaintiffs, and each member of the Class, formed a contract with Defendant at the time Plaintiffs and the other members of the Class purchased Walmart's GV Pomegranate Juice products. The terms of that contract include the express and implied promises and affirmations of fact made by Defendant on Walmart's GV Pomegranate Juice products' packaging and through their marketing campaign, as described above. Walmart's GV Pomegranate Juice products' packaging and advertising constitutes express and implied warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiffs and the members of the Class on the one end, and Defendant on the other.

108.    At all times, and as detailed above, Defendant expressly warranted that Walmart products were safe, effective and fit for use by consumers and users, including Plaintiffs and the Class, for their intended use, that they were of merchantable quality, and that the product contained Pomegranate juice as advertsised.

109.    At the time of making these and other warranties with respect to the content, efficacy, and characteristics of Walmart's GV Pomegranate Juice, Defendant knew or should have known that despite the above and other warranties alleged herein, it had breached the terms of the contract, including the warranties with Plaintiffs and the Class by providing Walmart's GV Pomegranate Juice named "cranberry pomegranate" juice blend that predominately contains apple juice and white grape juice concentrate.

110.    Members of the public, including Plaintiffs, reasonably relied upon the skill and judgment of Defendant, and upon said express warranties in purchasing Walmart's GV Pomegranate Juice.

111.    Plaintiffs and the Class purchased Walmart's GV Pomegranate Juice without knowledge that these products contained little to none of the predominant ingredients listed (i.e. pomegranate juice or cranberry juice).

112.    Due to Defendant's wrongful conduct as alleged herein, Plaintiffs and the Class could not have known about the true content of Walmart's GV Pomegranate Juice, which is more accurately nothing more than an "apple and grape juice blend".

113.    As a direct and proximate result of Defendant's breach of their contract, including the breach of express warranties with respect to Walmart's GV Pomegranate Juice, Plaintiffs suffered injuries as set forth above, entitling Plaintiffs to judgment and equitable relief against Defendant, as well as restitution, including all monies paid for Walmart's GV Pomegranate Juice and disgorgement of profits from Defendant received from sales of Walmart's GV Pomegranate Juice, attorneys' fees, punitive damages, and costs, as set forth in the Prayer for Relief.

114.    All conditions precedent to Defendant's liability under this contract, including notice, have been performed by Plaintiffs and the Class.

## COUNT III

### BREACH OF IMPLIED WARRANTY PURSUANT TO UNIFORM COMMERICAL CODE §2-314

115.    Plaintiffs realleges and incorporates by reference the allegations contained in paragraphs 1 through 91 above as if fully set forth herein.

116.    The Uniform Commercial Code §2-314 provides that, unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of the kind.

117.    At all times, Florida and the following 48 states including the District of Columbia, have codified and adopted the provisions the Uniform Commercial Code governing the implied warranty of merchantability. Ala. Code §7-2-314; Alaska Stat. §45.02.314; Ariz. Rev. Stat. Ann. §47-2314; Ark. Code Ann §4-2 314; Cal. Comm. Code §2314; Colo. Rev. St §4-2-314; Conn. Gen. Stat. Ann. §42a-2-314; 6 Del. C. §2-314; D.C. Code §28:2-314; Fla. Stat. Ann §672.314; Ga. Code. Ann. §11-2-314; Haw. Rev. Stat. §490:2-314; ld. Code §28-2- 314; Ill. Comp. Stat. Ann. Ch. 810, 5/2-314; Ind. Code. Ann. §26-1-2-314; Iowa Code Ann. §554.2314; Kansas Stat. Ann. §84-2-314; Ky. Rev. Stat. Ann §355.2-314; La. Civ. Code Ann. Art. §2520; 11 Maine Rev. Stat. Ann. §2-314; Md. Code Ann. §2-314; Mass. Gen. Laws. Ch. 106 §2-314; Mich. Comp. Laws Ann. §440.2.314; Minn. Stat. Ann §336.2-314; Miss. Code. Ann. §75-2-314; Missouri Rev. Stat §400.2-314; Mont. Code. Ann §30-2-314; Nev. Rev. Stat. U.C.C §104.2314; N.H. Rev. Ann. §382-A:2-314; N.]. Stat. Ann. §12A:2-314; N.M. Stat. Ann §55-2-314; N.Y. U.C.C. Law 2-314; N.C. Gen. Stat. Ann §25-2-314; N.D. Stat. §41-02-314; Ohio Rev. Code Ann. §1302.27; Okla. Stat. §2-314; Or. Rev. Stat. §72.3140; Pa. Stat. Ann §2314; R.I. Gen Laws §6A-2-314; S.C. Code Ann. §36-2-314; S.D. Stat. 57A-2-314; Tenn. Code Ann. §47-2-314; Tex. Bus. & Com. Code Ann. §2-314; Ut. Code Ann. §70A-2-314; VA Code §8.2-314; Vt. Stat. Ann §9A-2-314; W.VA. Code §46-2-314; Wis. Stat. Ann §402.314; and Wyo. Stat. §34.1-2-314

118.    Walmart's GV Pomegranate Juice is a "good" as defined in the various states' commercial codes governing the implied warranty of merchantability.

119.     As designers, manufacturers, licensors, producers, marketers, and sellers of Walmart's GV Pomegranate Juice, Defendant is a "merchant" within the meaning of the various states' commercial codes governing the implied warranty of merchantability.

120.     By placing Walmart's GV Pomegranate Juice in the stream of commerce, Defendant impliedly warranted that Walmart's GV Pomegranate Juice is reasonably safe and that all claims on their packaging were true, i.e. containing predominantly "pomegranate and cranberry" juices.

121.     As merchants of Walmart's GV Pomegranate Juice, Defendant knew that purchasers relied upon them to design, manufacture, license and sell products that were reasonably safe and not deceptively marketed, and in fact members of the public, including Plaintiffs, reasonably relied upon the skill and judgment of Defendant and upon said implied warranties in purchasing and consuming Walmart's GV Pomegranate Juice.

122.     Plaintiffs and the Class members purchased Walmart's GV Pomegranate Juice for their intended purpose.

123.     Walmart's GV Pomegranate Juice products' defects were not open or obvious to consumers, including Plaintiffs and the Class, who could not have known about the true nature and contents of Walmart's GV Pomegranate Juice products.

124.     As a direct and proximate result of Defendant's breach of implied warranties, Plaintiffs and Class members have sustained injuries by purchasing Walmart's GV Pomegranate Juice, which was not as represented, thus entitling Plaintiffs to judgment and equitable relief against Defendant, as well as restitution, including all monies paid for Walmart's GV Pomegranate Juice and disgorgement of profits from Defendant received from sales of

Walmart's GV Pomegranate Juice, attorneys' fees, punitive damages, and costs, as set forth in the Prayer for Relief.

**COUNT IV**

**UNJUST ENRICHMENT**

125.    Plaintiffs realleges and incorporates by reference the allegations contained in paragraphs 1 through 91 above as if fully set forth herein.

126.    As a result of Defendant's fraudulent and misleading labeling, advertising, marketing, and sales of Walmart's GV Pomegranate Juice, Defendant was enriched at the expense of Plaintiffs and the Class.

127.    Defendant sold Walmart's GV Pomegranate Juice to Plaintiffs and the Class which was a product that was illegally sold, illegally misbranded, and had little to no economic value.

128.    It would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiffs and the Class in light of the fact that the products were not what Defendant purported them to be.

129.    Thus, it would be unjust and inequitable for Defendant to retain the benefit without restitution to Plaintiffs and the Class of all monies paid to Defendant for the GV Pomegranate Juice product at issue.

130.    As a direct and proximate result of Defendant's actions, Plaintiffs and the Class have suffered damages in an amount to be proven at trial.

**<u>JURY DEMAND</u>**

Plaintiffs hereby demand a trial by jury of their claims.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs, individually, and on behalf of all others similarly situated

persons, pray for judgment against Defendant as follows:

    A.    For an order certifying this case as a Class Action and appointing Plaintiffs and their counsel to represent the Class;

    B.    That the Court adjudge and decree that Defendant has engaged in the conduct alleged herein;

    C.    Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of their conduct and pay them restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

    D.    Ordering Defendant to engage in a corrective advertising campaign;

    E.    Awarding Plaintiffs and the proposed Class members damages;

    F.    Awarding restitution and disgorgement to Plaintiffs and the other Class members;

    G.    Awarding Plaintiffs and the Classes punitive damages;

    H.    Awarding Plaintiffs treble damages;

    I.    Awarding attorneys' fees and costs; and

    J.    Providing such further relief as may be just and proper.

Dated: July 17, 2014

                            Respectfully submitted,

                            */s/ Tim Howard*
                            Tim Howard, J.D., Ph.D.
                            Florida Bar No.: 655325
                            tim@howardjustice.com
                            **HOWARD & ASSOCIATES, P.A.**
                            2120 Killarney Way, Suite 125
                            Tallahassee, FL 32309
                            Telephone: (850) 298-4455
                            Fax: (850) 216-2537