UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION
Case No. 4:14-cv-00381-WS-CAS

IRA REYNOLDS and PATRICIA BELL,
Individually and on behalf of all others
similarly situated,

                    Plaintiffs,

v.

WAL-MART STORES, INC.,

                    Defendant.

---

**WAL-MART'S MOTION TO DISMISS
AND INCORPORATED MEMORANDUM OF LAW**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................... 1

BACKGROUND ............................................................................................... 2

   A.  The *Pom Wonderful* Case. ................................................................... 2

   B.  Plaintiffs' Claims. ................................................................................. 3

LEGAL STANDARD ....................................................................................... 5

ARGUMENT .................................................................................................... 5

  I.  FEDERAL PREEMPTION REQUIRES DISMISSAL OF PLAINTIFFS'
     CLAIMS. ................................................................................................. 5

   A.  Dismissal of Preempted Claims Is Mandatory ...................................... 6

   B.  The FDCA/NLEA Contains an Express Preemption Provision. .................. 6

   C.  The FDCA/NLEA Expressly Preempts Plaintiffs' Claims. ......................... 8

     1.  The Juice's Name, Which Is the Basis for the Complaint, Fully Complies
        With the Requirements of the FDA Juice Labeling Regulations............................ 8

     2.  Plaintiffs' Claims Would Impose Requirements that Are Not Identical to
        the Requirements Imposed by the FDCA. ................................................... 9

 II.  EVEN ABSENT PREEMPTION, PLAINTIFFS FAIL TO STATE A CLAIM............. 12

   A.  FDUTPA's Safe Harbor Provision Precludes FDUTPA Claims Based on
      Practices Permitted by Law. ..................................................................... 12

   B.  Plaintiffs' Unjust Enrichment Claim Must Be Dismissed Because It Is Based
      on the Same Alleged Conduct as Their FDUTPA Claim. ........................... 14

   C.  Plaintiffs' Warranty Claims Must Be Dismissed For Failure to Provide Notice
      to Wal-Mart.............................................................................................. 16

   D.  Plaintiffs Lack Standing and Fail to State a Claim Because They Plead No
      Injury-In-Fact.......................................................................................... 17

   E.  Plaintiffs' Claims for Punitive and Treble Damages Must Be Dismissed.............. 19

CONCLUSION............................................................................................... 20

# TABLE OF AUTHORITIES

**Federal Cases**

*Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*,
   390 F. Supp. 2d 1170 (M.D. Fla. 2005) ................................................................14

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ...........................................................................................5

*Bates v. Dow Agrosciences, LLC*,
   544 U.S. 431 (2005).................................................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................................5

*Berenguer v. Warner-Lambert Co.*,
   No. 02-05242, 2003 WL 24299241 (S.D. Fla. July 31, 2003) ..............................13

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) .................................................................................18

*Brett v. Toyota Motor Sales, U.S.A., Inc.*,
   No. 08-cv-1168-Orl-28GJK, 2008 WL 4329876 (M.D. Fla. Sept. 15, 2008) ..................13, 15

*Davila v. Delta Air Lines, Inc.*,
   326 F.3d 1183 (11th Cir. 2003) ...............................................................................5

*Degirmenci v. Sapphire-Fort Lauderdale, LLLP*,
   693 F. Supp. 2d 1325 (S.D. Fla. 2010) ................................................................15

*In re Ferrero Litig.*,
   794 F. Supp. 2d 1107 (S.D. Cal. 2011).................................................................7

*G.M. Brod & Co. Inc. v. U.S. Home Corp.*,
   759 F.2d 1526 (11th Cir. 1985) ............................................................................20

*Greenfield v. Yucatan Foods, L.P.*,
   No. 13-21610, 2014 U.S. Dist. LEXIS 65958 (S.D. Fla. May 7, 2014)................10

*Grillasca v. Amerada Hess Corp.*,
   No. 8:05-cv-1736-T, 2006 WL 3313719 (M.D. Fla. Nov. 14, 2006)....................12

*Jovine v. Abbott Labs., Inc.*,
   795 F. Supp. 2d 1331 (S.D. Fla. 2011) ..........................................................14, 16

*Koronthaly v. L'Oreal USA, Inc.*,
   374 Fed. Appx. 257 (3d Cir. 2010)........................................................................19

*Kuenzig v. Hormel Foods Corp.*,
   505 Fed. Appx. 937 (11th Cir. 2013).................................................................7, 10

*Kuenzig v. Kraft Global Foods, Inc.*,
   No. 8:11-cv-838-T-24-TGW, 2012 WL 366916 (M.D. Fla. Feb. 3, 2012) ...........13

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)....................................................................................17

*Medley v. Johnson & Johnson*,
    No. 10-cv-02291, 2011 U.S. Dist. LEXIS 4627 (D.N.J. Jan. 18, 2011)...................................17

*Mills v. Giant of Md., LLC*,
    441 F. Supp. 2d 104 (D.D.C. 2006)................................................................7

*Nemphas ex rei. C.G.N. v. Nestle USA, Inc.*,
    No. GLR 12-2718, 2013 U.S. Dist. LEXIS 118369 (D. Md. Aug. 21, 2013) ........................10

*In re Pepsico Inc. Bottled Water Marketing & Sales Practices Litig.*,
    588 F. Supp. 2d 527 (S.D.N.Y. 2008)............................................................6

*Peviani v. Hostess Brands, Inc.*,
    750 F. Supp. 2d 1111 (C.D. Cal. 2010) .........................................................6

*Pom Wonderful LLC v. The Coca Cola Co.*,
    CV 08-06237 SJO JTLX, 2009 WL 7050005 (C.D. Cal. Feb. 10, 2009), *aff'd sub nom. Pom Wonderful LLC v. The Coca-Cola Co.*, 679 F.3d 1170 (9th Cir. 2012), *rev'd*, 134 S. Ct. 2228, 189 L. Ed. 2d 141 (2014) ................2, 3

*Pom Wonderful LLC v. The Coca-Cola Co.*,
    13-55770 (9th Cir. 2008) ............................................................................2

*Pom Wonderful LLC v. The Coca-Cola Company*,
    134 S. Ct. 2228 (2014).............................................................................2, 3

*Prohias v. Pfizer, Inc.*,
    490 F. Supp. 2d 1228 (S.D. Fla. 2007) ...................................................13, 14, 15

*Randolph v. J.M. Smucker Co.*,
    2014 WL 1018007 (S.D. Fla. March 14, 2014)................................................16

*Rivera v. Wyeth-Ayerst Labs.*,
    283 F.3d 315 (5th Cir. 2002) ....................................................................18

*Shibata v. Lim*,
    133 F. Supp. 2d 1311 (M.D. Fla. 2000)......................................................19

*Sinaltrainal v. The Coca-Cola Co.*,
    578 F.3d 1252 (11th Cir. 2009) ...................................................................5

*Stalley v. Orlando Reg. Healthcare Sys.*,
    524 F.3d 1229 (11th Cir. 2008) ...................................................................5

*State of Fla., Office of Atty. Gen., Dept. of Legal Affairs v. Tenet Healthcare Corp.*,
    420 F. Supp. 2d 1288 (S.D. Fla. 2005) .....................................................13

*Stein v. Paradigm Mirasol, LLC*,
    586 F.3d 849 (11th Cir. 2009), *cert. denied*, 130 S.Ct. 1903 (2010).....................20

*Taylor v. Homecomings Fin., LLC*,
    738 F. Supp. 2d 1257 (N.D. Fla. 2010)......................................................13

*Third Party Verification, Inc. v. Signaturelink, Inc.*,
    492 F. Supp. 2d 1314 (M.D. Fla. 2007)........................................................12

*Turek v. Gen. Mills, Inc.*,
    662 F.3d 423 (7th Cir. 2011) ......................................................................10

*Young v. Johnson & Johnson*,
    No. 11-4580, 2012 WL 1372286 (D.N.J. Apr. 19, 2012)..................................6, 18

**State Cases**

*Boca Burger, Inc. v. Forum*,
    912 So. 2d 561 (Fla. 2005)...........................................................................6

*In re Farm Raised Salmon Cases*,
    42 Cal. 4th 1077 (Cal. 2008)...................................................................7, 12

*Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.*,
    687 So. 2d 821 (Fla. 1996).........................................................................20

*Griffin v. Shamrock Village, Inc.*,
    94 So. 2d 854 (Fla. 1957)...........................................................................20

*Lam v. General Mills, Inc.*,
    No. 11-5056-SC, 2012 WL 1656731 (N.D. Cal. May 10, 2012)............................6

*Nicholas v. Miami Burglar Alarm Co., Inc.*,
    399 So. 2d 175 (Fla. 1976).........................................................................20

*Prohias v. AstraZeneca Pharm., L.P.*,
    958 So. 2d 1054 (Fla. 3rd DCA 2007).........................................................15

*Shands Teaching Hosp. & Clinics, Inc. v. Beech Street Corp.*,
    899 So. 2d 1222 (Fla. 1st DCA 2005).........................................................14

**Federal Statutes**

21 U.S.C. § 301..............................................................................................1

21 U.S.C. § 341..............................................................................................1

21 U.S.C. § 343-1 .....................................................................................1, 4, 6

21 U.S.C. § 343(i)......................................................................................4, 8

21 U.S.C. § 343-1(a)..................................................................................7, 8

21 U.S.C. § 343-1(a)(3).................................................................................8

21 U.S.C. § 343(a)(1).....................................................................................6

21 U.S.C. § 343(f).....................................................................................4, 8

**State Statutes**

Cal. Bus. & Prof. Code § 17200 .......................................................................3

Cal. Bus. & Prof. Code § 17500 ..........................................................................3

Fla. Stat. § 501.204(1) ......................................................................................12

Fla. Stat. § 501.212(1) ......................................................................................13

Fla. Stat. § 672.607(3) ......................................................................................16

**Rules**

Fed. R. Civ. P. 12(b)(1) ...................................................................................1, 5

Fed. R. Civ. P. 12(b)(6) ...................................................................................1, 5

N.D. Fla. Local Rule 7.1(B) ..............................................................................21

**Regulations**

21 C.F.R. § 101.1 ...............................................................................................8

21 C.F.R. § 101.22(i)(1)(i) ..................................................................................9

21 C.F.R. § 101.22(i)(1)(iii) ................................................................................9

21 C.F.R. § 102.33(c) .......................................................................................5, 8

21 C.F.R. §§ 102.33(c-d) ..................................................................................4, 8

21 C.F.R. § 102.33(d)(l) ...................................................................................4, 8

58 Fed. Reg. 2897 at 2921, ¶52 .....................................................................9, 11

**Constitutional Provisions**

U.S. Const. art. III ...........................................................................................17

U.S. Const. art. VI, cl. 2 .....................................................................................6

**Other Authorities**

Nutrition Labeling and Education Act of 1990 (Pub. L. N. 101-535 (Nov. 8, 1990)
   104 Stat. 2353) ...........................................................................................12

Defendant Wal-Mart Stores, Inc. ("Wal-Mart") respectfully moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  In further support thereof, Defendant submits the following:

## PRELIMINARY STATEMENT

In this putative class action, Plaintiffs Ira Reynolds and Patricia Bell are attempting to bring state-law based claims concerning the federally-regulated name and label of a flavored juice blend distributed under Wal-Mart's Great Value brand, and labeled "Cranberry Pomegranate Flavored Juice Blend" (the "Juice").  Plaintiffs assert that by calling out the characteristic cranberry-pomegranate flavor of the Juice, the label misleads consumers to believe the Juice consists predominantly of cranberry and pomegranate juices when, in fact, it is mostly comprised of other juices.  On this basis, Plaintiffs allege the Juice is "misbranded'' and "illegal" under Florida state law, and bring causes of action based on FDUTPA, warranty, and unjust enrichment.

Plaintiffs' claims must be dismissed for the following three primary reasons:

(1) Plaintiffs' claims are preempted by the federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq.*, as modified by the Nutrition Labeling Education Act ("NLEA"), 21 U.S.C. § 341, *et seq.*, which expressly preempts any state law claim that would impose food labeling requirements "not identical to" those of the FDCA.  *See* 21 U.S.C. § 343-1.

(2) Even if Plaintiffs' claims were not preempted, they are precluded by the "safe harbor" provision of FDUTPA because the products at issue are labeled as specifically permitted by federal law and associated regulations.

(3) Plaintiffs lack standing to assert their claims, and similarly fail to state a claim, because they have not pleaded an injury-in-fact.

## BACKGROUND

A.      The *Pom Wonderful* Case.

There is already a significant history of litigation with regard to labeling of pomegranate-flavored drinks.   In 2008, Pom Wonderful LLC ("Pom") sued The Coca-Cola Company ("Coke") and The Minute Maid Company ("Minute Maid") over another pomegranate-flavored drink (the "Minute Maid Juice"), asserting a federal Lanham Act claim and several state-law claims that Plaintiffs mimic in this proceeding.[1]  Coke and Minute Maid prevailed on summary judgment in the District Court in that case on Pom's Lanham Act claim and, later, on Pom's state-law claims.  Two separate appeals followed.  The first appeal, concerning whether Pom's Lanham Act claim was precluded by the FDCA's juice labeling requirements, was further appealed to the U.S. Supreme Court, and on June 12, 2014, the Supreme Court reversed the District Court decision and found that FDA rules did not preclude Pom's federal Lanham Act claims.  *Pom Wonderful LLC v. The Coca-Cola Company*, 134 S. Ct. 2228 (2014).  The second appeal, concerning whether Pom's state law claims were preempted by the FDCA (as the District Court held), was abandoned by Pom on September 19, 2014. *See Pom Wonderful LLC v. The Coca-Cola Co.,* 13-55770 (9th Cir. 2008) (ECF 21).

After the Supreme Court reversed the District Court's Lanham Act decision, plaintiffs around the country filed other would-be class actions seeking to challenge the labeling of

---

[1] *See Pom Wonderful LLC v. The Coca Cola Co*., CV 08-06237 SJO JTLX, 2009 WL 7050005 (C.D. Cal. Feb. 10, 2009), *aff'd sub nom. Pom Wonderful LLC v. The Coca-Cola Co*., 679 F.3d 1170 (9th Cir. 2012), *rev'd*, 134 S. Ct. 2228, 189 L. Ed. 2d 141 (2014).

pomegranate juice by a variety of companies. This case is an example, having been filed the day after the Supreme Court's decision. However, while the Plaintiffs here apparently perceived, mistakenly, that the Supreme Court's decision provided support for claims like theirs, the Supreme Court's decision based on the Lanham Act does not inform the state-law based claims that were the subject of the second *Pom Wonderful* appeal or in the Complaint in this case. The Supreme Court had granted certiorari in *Pom Wonderful* on the narrow question of "whether a private party may bring a Lanham Act claim challenging a food label that is regulated by the FDCA." *Pom Wonderful, supra,* 134 S. Ct. at 2236. In its ruling that a Lanham Act claim was not precluded by compliance with the regulations of the Food and Drug Administration ("FDA"), *id.* at 2241, the Supreme Court gave no indication it intended to upset well-established law governing express preemption of state-law claims regarding food labeling. To the contrary, the opinion made clear that preemption of state-law claims was *not* an issue before it. 134 S. Ct. at 2236. Furthermore, as noted above, plaintiff in that case abandoned the appeal with regard to its state-law claims, leaving in place the District Court's decision that the state law claims attacking the Minute Maid Juice label were preempted.[2]

## B.    Plaintiffs' Claims.

In their Complaint, Plaintiffs allege that labeling the Juice as a Cranberry Pomegranate Flavored Juice Blend misleads consumers to believe the Juice contains predominantly cranberry and pomegranate juices, when in fact it consists primarily of less expensive apple and grape juices. *See* Complaint, ¶3. But the Juice's name clearly states that it is a "flavored juice blend," as permitted under federal regulations; the ingredients list clearly identifies apple and grape

---

[2] In *Pom Wonderful*, the plaintiffs' state-law claims were claims for false advertising under the California Business and Professions Code § 17500, and statutory unfair competition under § 17200 of the Code. *See Pom Wonderful, supra,* 2009 WL 7050005.

juices, which Plaintiffs allege are the predominant juices; and all aspects of the label comply with federal regulations, even down to the font size.

Plaintiffs nevertheless assert that the Juice's name and label conceal its true composition, making the product "misbranded" and "illegal" under Florida law.  They assert claims under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and for common law breach of express warranties, breach of implied warranty under the Uniform Commercial Code, and unjust enrichment.

Because the Juice name and label are authorized by regulations promulgated by the FDA pursuant to the FDCA, Plaintiffs' claims – all based on state law – are preempted by federal law. The FDCA contains an express preemption provision that bars "any requirement for the labeling of food of the type required by" certain sections of the statute,[3] if that requirement is "not identical to" FDCA requirements.  21 U.S.C. § 343-1.  Plaintiffs propose that the Court second-guess the labeling requirements of the FDCA with new terms, to Plaintiffs' liking.  Such forays are preempted, however, where (as here) the label complies with the FDCA's requirements.

In this case, the Juice's name mentions juices that are not predominant.  FDA regulations governing the naming and labeling of fruit juices contemplate situations exactly like this, and explicitly provide that if a juice blend's name mentions only juices that are "not the predominant juice, the common or usual name for the product shall…indicate that the named juice is present as a flavor or flavoring." 21 C.F.R. § 102.33(d)(l).  The regulations further specify that, if the name of a multiple-juice beverage does not identify all component juices on the label, it must

---

[3] Those sections include the ones at issue here – i.e., provisions that govern the naming and labeling of blends or mixtures of several juices where there are one or two juices present in only minor amounts to provide flavor.  *See* 21 C.F.R. §§ 102.33(c-d); 21 U.S.C. § 343(f), (i).

include a word such as "flavored" or "blend." 21 C.F.R. § 102.33(c).  Here, the label complies

with the regulation precisely:  the label clearly includes the words "flavored juice blend."

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1),  a court should  dismiss a Complaint for

lack of subject matter jurisdiction if the plaintiff lacks Article III standing.  *Stalley v. Orlando*

*Reg. Healthcare Sys.*, 524 F.3d 1229, 1232 (11th Cir. 2008).  Furthermore, under Federal Rule of

Civil Procedure 12(b)(6),  the Court should dismiss a Complaint for failure to state a claim if a

plaintiff fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1960

(2009).  Unless a complaint pleads sufficient facts to cross the line "from [the] conceivable to

[the] plausible," it must be dismissed. *Sinaltrainal v. The Coca-Cola Co.*, 578 F.3d 1252, 1261

(11th Cir. 2009).  "Conclusory allegations, unwarranted factual deductions or legal conclusions

masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183,

1185 (11th Cir. 2003).

## ARGUMENT

## I.    FEDERAL PREEMPTION REQUIRES DISMISSAL OF PLAINTIFFS' CLAIMS.

Plaintiffs' claims are preempted by federal law because Plaintiffs seek to hold Wal-Mart

liable for conduct expressly permitted and indeed required by the FDCA, as modified by the

NLEA.  For this reason, this Court should dismiss all counts in Plaintiffs' Complaint in their

entirety, with prejudice.

5

### A.  Dismissal of Preempted Claims Is Mandatory.

The preemption doctrine is rooted in the Supremacy Clause of the United States Constitution.  U.S. Const. art. VI, cl. 2.  Under the Supremacy Clause, "Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) (citations omitted).  Because preemption relates to subject matter jurisdiction, preempted claims must be dismissed.  *See, e.g.*, *Boca Burger, Inc. v. Forum*, 912 So. 2d 561, 568-69 (Fla. 2005) (internal citations omitted).

### B.  The FDCA/NLEA Contains an Express Preemption Provision.

The NLEA was enacted, in part, to prevent labeling that is "false or misleading in any particular." 21 U.S.C. § 343(a)(1).  To serve this purpose, Congress established uniform national labeling requirements for nutritional and other information on food labels. *See Lam v. General Mills, Inc.*, No. 11-5056-SC, 2012 WL 1656731, *3 (N.D. Cal. May 10, 2012). This uniformity prevents market confusion and Congress expressly provided that any state labeling requirements different from the federal requirements are preempted. 21 U.S.C. § 343-1. Courts have routinely recognized 21 U.S.C. § 343-1 as an express preemption clause that provides for dismissal of preempted claims at the pleading stage. *See, e.g.*, *Young v. Johnson & Johnson*, No. 11-4580, 2012 WL 1372286, *5 (D.N.J. Apr. 19, 2012) (dismissing claims preempted by § 343-1); *In re Pepsico Inc. Bottled Water Marketing & Sales Practices Litig.*, 588 F. Supp. 2d 527, 532-39 (S.D.N.Y. 2008) (same).[4] Similarly, the Eleventh Circuit Court of Appeals has affirmed the

---

[4] *See also Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1118-20 (C.D. Cal. 2010); *Lam v. General Mills, Inc.*, No. 11-5056-SC, 2012 WL 1656731, *3-5 (N.D. Cal. May 10, 2012).

dismissal of labeling claims where Florida law attempts to impose labeling requirements in "addition to, or different than" those set forth in federal law.  *See Kuenzig v. Hormel Foods Corp.,* 505 Fed. Appx. 937, 938 (11th Cir. 2013).

Section 343-1 is a broad express preemption provision stating in relevant part that "no State or political subdivision of a State may directly or indirectly establish" a requirement "not identical to" a host of federal labeling requirements.  21 U.S.C. § 343-1(a) (emphasis added); *see Mills v. Giant of Md., LLC*, 441 F. Supp. 2d 104, 106-09 (D.D.C. 2006) (noting the extensive scope of the NLEA preemption clause).  "'Not identical' means that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food, or concerning a food container, that: (i) Are not imposed by or contained in the applicable provision or regulation; or (ii) Differ from those specifically imposed by or contained in the applicable provision or regulation."  *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1114 (S.D. Cal. 2011) (emphasis added).

This broad preemption provision is consistent with Congress's purpose in adopting the NLEA:  "to create uniform national standards regarding the labeling of food and to prevent states from adopting inconsistent requirements with respect to the labeling of nutrients." *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1086 (Cal. 2008) (emphasis added).  The kinds of state law "requirement[s]" preempted include not only formal enactments, like the Florida regulations relied on by Plaintiffs, but also common-law duties and court-made rules. *See Bates v. Dow Agrosciences, LLC*, 544 U.S. 431, 443 (2005); *Mills*, 441 F. Supp. 2d at 108 (dismissing claims seeking to impose warning on milk labels, holding that "the common law duties plaintiffs seek to impose" were preempted by NLEA's "broad" preemption clause prohibiting any requirements that differ from federal requirements).

### C.  The FDCA/NLEA Expressly Preempts Plaintiffs' Claims.

Plaintiffs' claims are preempted because they attempt to impose liability on Wal-Mart for selling a product labeled according to practices expressly permitted by federal law.  Section 343-1(a) of the NLEA provides that "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce" any "standard of identity" or other labeling requirement "not identical to" corresponding federal laws.  21 U.S.C. § 343-1(a).  The types of labeling requirements expressly preempted include "any requirement for the labeling of food of the type required by [21 U.S.C. §] 343(b), 343(d), 343(f), 343(h), 343(i)(1), or 343(k)."  21 U.S.C. § 343-1(a)(3).

#### 1.  The Juice's Name, Which Is the Basis for the Complaint, Fully Complies With the Requirements of the FDA Juice Labeling Regulations.

In this case, the Juice's name mentions juices that are not predominant.  FDA regulations governing the naming and labeling of fruit juices contemplate exactly such a situation, and include specific provisions that govern the naming and labeling of blends or mixtures of several juices.  *See* 21 C.F.R. §§ 102.33(c-d); *and see* 21 U.S.C. § 343(f), (i).  These regulations explicitly provide that if a juice blend's name mentions only juices that are "not the predominant juice, the common or usual name for the product shall…indicate that the named juice is present as a flavor or flavoring." 21 C.F.R. § 102.33(d)(l).  The regulations further specify that if the name of a multiple-juice beverage does not identify all component juices on the label, it must include a word such as "flavored" or "blend." 21 C.F.R. § 102.33(c).

Here, Wal-Mart more than complies with the regulation, as the label clearly includes *both* of those words in the phrase, "flavored juice blend."[5]  Moreover, in the preamble to its final juice

---

[5]  Plaintiffs repeatedly ignore these important terms, and obfuscate the name of the product in their Complaint.  As the image of the product set forth in the complaint shows, the words shown on the front label (the "principal display panel," or "PDP," *see* 21 C.F.R. § 101.1)

labeling rule, the FDA discusses as an example "a 100 percent juice product consisting of apple, grape, and raspberry juices, in which the raspberry juice provides the characterizing flavor" and the bottle depicts a vignette containing only raspberries.  58 Fed. Reg. 2897 at 2921, ¶52. The FDA concluded that "the vignette [depicting solely raspberries] would not be misleading if the beverage were named 'raspberry flavored fruit juice blend.'" *Id*. The label at issue in this case, which describes the Juice as "100% Cranberry Pomegranate Flavored Juice Blend" contains a common name that is substantively the same as the compliant example provided by the FDA.

Other federal regulations govern the relative prominence of the various components of the product's name.  *See, e.g.,* 21 C.F.R. § 101.22(i)(1)(i) and (iii) (requiring that the word "flavor[ed]" be ''not less than one-half the height of the letters in the name of the characterizing flavor"). As shown in the image of the product which is shown in the Complaint, the Juice's label complies with each and every one of these federal regulations, including the font size. Moreover, while Plaintiffs suggest vaguely that the label includes the term "flavored juice blend" in "much smaller type" (*see* Complaint, ¶ 9), nowhere in their Complaint do Plaintiffs allege that the word "flavored" is less than one-half the height of the letters in the name of the characterizing flavor.

### 2. Plaintiffs' Claims Would Impose Requirements that Are Not Identical to the Requirements Imposed by the FDCA.

Plaintiffs propose that the Court institute additional juice-naming conventions in Florida, based on Florida statutes and common law.  But *any* state law – whether statutory or judge-made – that purports to impose food labeling requirements not identical to those imposed by the FDCA

---

are: "100% Cranberry Pomegranate *Flavored Juice Blend*" (italics added).   Nonetheless, Plaintiffs refer to the product as "Great Value 100% Cranberry Pomegranate" (Complaint, ¶ 1), which is wrong; Plaintiffs assert that the label says, "100% Juice Cranberry Pomegranate" (Complaint, ¶ 3), which is false; and Plaintiffs assert that the label says, "100% Cranberry Pomegranate Juice" (Complaint, ¶ 8), which is also false.  Each of Plaintiffs' distorted namings ignores the regulatory-directed terms "flavored juice blend."

is expressly preempted.  *See, e.g., Turek v. Gen. Mills, Inc.,* 662 F.3d 423, 427 (7th Cir. 2011)

("Even if the disclaimers that the plaintiff wants added [to the label pursuant to Illinois law]

would be consistent with the requirements imposed by the [FDCA], consistency is not the test;

identity is."); *Nemphas ex rei. C.G.N. v. Nestle USA, Inc.,* No. GLR 12-2718, 2013 U.S. Dist.

LEXIS 118369, at 10 (D. Md. Aug. 21, 2013) ("When the [Maryland] state statute or cause of

action would impose a requirement that is not the same as the federal requirement, it is

preempted.").

     Florida laws are no exception.  Indeed, the Eleventh Circuit has made clear that claims

brought under FDUTPA – such as Plaintiffs' claims here – must give way when they run afoul of

a federal statute's express preemption provision.  *See Kuenzig v. Hormel Foods Corp.,* 505 Fed.

at 937 (affirming dismissal of FDUTPA claims that would impose labeling requirements "in

addition to, or different than" those set forth under federal poultry and meat inspection statutes);

*see also Greenfield v. Yucatan Foods, L.P.,* No. 13-21610, 2014 U.S. Dist. LEXIS 65958, at *5

(S.D. Fla. May 7, 2014) (noting that where defendant's label complies with FDA standards, a

plaintiff "cannot state a claim for a *per se* violation of FDUTPA because the Florida food

regulations must be identical to the FDA's.").[6]

---

[6] To the extent Plaintiffs claim that some unspecified violation of one or more federal
statutes or regulations amounts to a *per se* violation of FDUTPA, *see* Complaint, ¶ 97, that
argument is meritless.  Plaintiffs do no more than provide a laundry list of citations to various
federal statutes, including the Federal Food Drug and Cosmetic Act (FDCA), without explaining
or even suggesting how Wal-Mart is alleged to have violated any of them.  *Id.*  This is patently
insufficient to state a claim under *Twombly.*  Moreover, Plaintiffs tie themselves in knots by
expressly stating elsewhere in the Complaint that they "do not seek to contest or enforce the
FDCA or FDA regulation requirements," Complaint, ¶ 32, thereby effectively admitting that they
are not directly challenging the label on federal regulatory grounds.  Thus, Plaintiffs' own
disclaimer makes their laundry list of federal statutes irrelevant.  Plaintiffs' contradictory
positions within the same Complaint (*i.e.*, disclaiming all intention of challenging compliance
with federal statutes and regulations while simultaneously invoking them to support a FDUTPA

Here, Plaintiffs remain artfully vague about proposing a specific label that would pass muster under their criteria, but it is clear that their requirements are not identical to the federal regulations discussed above.  For instance, Plaintiffs propose that the Juice must be called "Apple Grape" juice after the "two primary juices" in the product. Complaint, ¶ 29, and complain about the "prominent display of pomegranates" on the label.  Complaint, ¶ 31.

It is clear that Plaintiffs are aware of the preemption bar, and they go so far as to claim that they are not challenging "the product's formal name and labeling in areas for which the [FDA] has promulgated regulations," Complaint, ¶ 32, in an attempt to avoid preemption.  But challenging the federally-regulated name and label of the Juice is exactly what Plaintiffs do, and they could not obtain the relief they desire (requiring the Juice name and label to read and appear differently) without the Court running afoul of the FDA regulations and federal preemption.

For example, if the Court were to order that the Juice must be called "Apple Grape" to comply with Plaintiffs' view of Florida law (as Plaintiffs suggest, *see* Complaint, ¶¶ 29, 30, and 34), the Court would thus create a new Florida-specific rule that juices must be labeled in order of ingredients.  Such a rule would be "not identical to" the FDCA regulations, which expressly provide that ingredients need *not* be listed in order on the front label if the juice is a "flavored blend."  Furthermore, Plaintiffs object to the image of pomegranates on the label of the Juice, but images of the fruit that provides the characterizing flavor are perfectly acceptable on juice labels, according to the FDA.  *See* 58 Fed. Reg. 2897 at 2921, ¶ 52 (discussing example of label of juice product consisting of apple, grape, and raspberry juices, in which the raspberry juice provides the characterizing flavor and the bottle depicts a vignette containing only raspberries). Plaintiffs simply cannot challenge the name and label of the Juice, where the name and label are expressly

---

claim) are the product of a desperate effort to avoid preemption of state law claims that are, in fact, squarely preempted by federal regulation.

governed by federal regulations that preempt anything "not identical to" the federal regulations themselves.[7]

## II.   EVEN ABSENT PREEMPTION, PLAINTIFFS FAIL TO STATE A CLAIM.

Plaintiffs rely on the assertion that the Juice was "misbranded" pursuant to the Florida Food Safety Act as the premise for their claims for other relief. *See* Complaint, ¶¶ 12, 13, 14. For a variety of reasons explained below, Plaintiffs fail to state actionable claims under FDUTPA or for unjust enrichment. In fact, Plaintiffs have failed to even plead an injury-in-fact that would give them standing to bring their faulty claims.

### A.   FDUTPA's Safe Harbor Provision Precludes FDUTPA Claims Based on Practices Permitted by Law.

FDUTPA prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204(1), Fla. Stat. (2012). "To state a claim for Deceptive and Unfair Trade Practices under Florida law, a party must plead (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages or aggrievement." *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1326 (M.D. Fla. 2007) (citing *Grillasca v. Amerada Hess Corp.*, No. 8:05-cv-1736-T, 2006 WL 3313719 at *4 (M.D. Fla. Nov. 14, 2006)). Plaintiffs cannot satisfy the first

---

[7] Nor is there any merit to Plaintiffs' allegation in the Complaint that the federal regulations simply set the "floor" or "minimum" requirements for a label. Complaint, ¶ 32. Congress has mandated uniform national standards regarding the labeling of food and beverages under the FDCA. See Nutrition Labeling and Education Act of 1990 ("NLEA"), (Pub. L. N. 101-535 (Nov. 8, 1990) 104 Stat. 2353). "The purpose of the NLEA was to create uniform national standards regarding the labeling of food and to prevent states from adopting inconsistent requirements with respect to the labeling of nutrients." *In re Farm Raised Salmon Cases*, 42 Cal.4th 1077, 1086 (2008). Plaintiffs' state law claims under FDUTPA improperly seek to undermine that uniformity by imposing different juice-labeling requirements for the product label attacked in this case.

element, however, because FDUTPA contains a "safe harbor" provision stating that conduct authorized by law cannot be deceptive or unfair.

Wal-Mart is shielded from liability by FDUTPA's safe harbor provision, which specifically exempts from liability practices or acts required or permitted by federal law. § 501.212(1), Fla. Stat.   Indeed, any federal or state statute, rule, or regulation that "affirmatively authorizes" the challenged conduct invokes this safe harbor.  *See e.g., State of Fla., Office of Atty. Gen., Dept. of Legal Affairs v. Tenet Healthcare  Corp.*, 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005) (framing issue as whether "a specific federal or state law affirmatively authorized [the defendant] to engage in the conduct alleged in the Complaint"); *Brett v. Toyota Motor Sales, U.S.A., Inc.*, No. 08-cv-1168-Orl-28GJK, 2008 WL 4329876, *7 (M.D. Fla. Sept. 15, 2008); *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1233 (S.D. Fla. 2007) (FDUTPA's safe harbor provision bars "lawsuits challenging conduct which is specifically permitted by a federal or state regulatory scheme").

In *Taylor v. Homecomings Fin., LLC*, 738 F. Supp. 2d 1257, 1259 (N.D. Fla. 2010), plaintiffs brought FDUTPA and other claims alleging that loan documents failed to adequately disclose particular loan terms.  *Id.*  Because the loan documents complied with the federal Truth in Lending Act, however, FDUTPA's safe harbor precluded liability.  *Id.* at 1265.  The safe harbor operates in the same manner where federal rules authorize the challenged labeling of a product.  *See, e.g., Kuenzig v. Kraft Global Foods, Inc.*, No. 8:11-cv-838-T-24-TGW, 2012 WL 366916, *3 (M.D. Fla. Feb. 3, 2012) (finding that "because [the defendant] complied with [FDA] regulations regarding the use of the 'percent fat free' claim on its labels, and because the USDA approved [the defendant]'s labels," dismissal pursuant to FDUTPA's safe harbor was "clearly warranted"); *Berenguer v. Warner-Lambert Co.*, No. 02-05242, 2003 WL 24299241,

*3 (S.D. Fla. July 31, 2003) ("Because the FDA 'required or specifically permitted' defendants to make this statement [in an advertisement], plaintiffs' cause of action is barred by FDUTPA's safe harbor provision.").

Following the conventions for naming and labeling the Juice is not just permitted, but is required by federal law.  Wal-Mart is therefore protected by FDUTPA's safe harbor provision. Plaintiffs therefore cannot state a claim for a deceptive practice based on Wal-Mart's alleged conduct as described in the Complaint.

### B.  Plaintiffs' Unjust Enrichment Claim Must Be Dismissed Because It Is Based on the Same Alleged Conduct as Their FDUTPA Claim.

Because Plaintiffs cannot state an FDUTPA claim, their unjust enrichment claim must also be dismissed. Unjust enrichment is an equitable doctrine that applies only where (1) the plaintiff conferred a benefit on the defendant who had knowledge of the benefit; (2) the defendant voluntarily accepted and retained the benefit; and (3) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying for it. *See Shands Teaching Hosp. & Clinics, Inc. v. Beech Street Corp.*, 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005).

Because unjust enrichment is equitable in nature, dismissal of such a claim is required if the plaintiff has an adequate remedy at law.  *See Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1236 (S.D. Fla. 2007) (dismissing unjust enrichment claim premised on misrepresentations of a product's qualities) (citing *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005)).

When a plaintiff asserts an unjust enrichment claim and a claim of deception or consumer fraud based on the same conduct, dismissal of the deception or consumer fraud claim requires dismissal of the unjust enrichment claim. *See, e.g.*, *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d

14

1331, 1342 (S.D. Fla. 2011) ("[A]lthough a plaintiff ordinarily may plead in the alternative, here, if Plaintiff cannot prevail with his [FDUTPA claim], he cannot prevail on his unjust enrichment claim."); *Prohias*, 490 F. Supp. 2d at 1236; *Prohias v. AstraZeneca Pharm., L.P.*, 958 So. 2d 1054, 1056 (Fla. 3rd DCA 2007) (affirming dismissal of FDUTPA and unjust enrichment claims because the safe harbor applied).  Because Plaintiffs' unjust enrichment claim arises from the same conduct – namely, the naming of the product on the label – that is also the sole basis for their FDUTPA claim, both must be dismissed.

Plaintiffs' unjust enrichment claims also must be dismissed because, similar to the operation of the safe harbor of FDUTPA, an unjust enrichment claim cannot lie as a matter of law for conduct permitted by federal law.  *Brett v. Toyota Motor Sales, USA, Inc.,* No. 08-cv-1168, 2008 WL 4329876, *8 (M.D. Fla. 2008) ("[T]he act or practice alleged to be misconduct is permissible and required by federal law.  Thus, as a matter of law, the act or practice is not and cannot be misconduct that would give rise to unjust enrichment."). As explained above, the challenged product naming was permissible and required under the FDA regulations.  Accordingly, an unjust enrichment claim will not lie based on that label.

Finally, under Florida law, a claim for unjust enrichment cannot stand where an express contract exists.  *See*, *e.g.*, *Degirmenci v. Sapphire-Fort Lauderdale, LLLP*, 693 F. Supp. 2d 1325, 1347-1348 (S.D. Fla. 2010) (dismissing claims for unjust enrichment at the pleading stage because an express contract existed).  Plaintiffs clearly averred the existence of a contract of sale in the Complaint.  *See* Complaint, ¶ 107 ("Plaintiffs, and each member of the Class, formed a contract with Defendant at the time Plaintiffs and other members of the Class purchased Walmart's GV Pomegranate Juice products.  The terms of the contract included the express and implied promises and affirmation of fact made by Defendant on Walmart's Pomegranate Juice

products' packaging and through their marketing campaign…").  Plaintiffs also averred that the contract was breached by the Defendant entitling Plaintiffs to bring a claim for, *inter alia*, breach of express warranty, a claim based upon contract principles. *See* Complaint, Count II.  Because the Plaintiffs aver the existence of an express contract, Plaintiffs unjust enrichment claims cannot stand.

### C.  Plaintiffs' Warranty Claims Must Be Dismissed For Failure to Provide Notice to Wal-Mart.

Under Florida law, to state a claim for breach of warranty, a Plaintiff must allege notice to the seller of the breach prior to filing suit.  § 672.607(3), Fla. Stat. ("The buyer must within a reasonable time after he or she discovered or should have discovered any breach notify the seller of the breach or be barred from any remedy").  Because the Complaint fails to allege that Plaintiffs provided notice to the seller of the alleged breach warranty prior to filing suit, the Plaintiffs have not met the pre-suit requirements of the Uniform Commercial Code, and the express warranty claim (Count II)[8] and implied warranty claim (Count III) therefore must be dismissed *See Randolph v. J.M. Smucker Co.*, 2014 WL 1018007 (S.D. Fla. March 14, 2014) ("[t]o plead a breach of express warranty in Florida, the Complaint must include an allegation that notice was given to the seller of the breach."); *accord Jovine v. Abbott Laboratories, Inc.*, 795 F.Supp.2d1331, 1340 (S.D. Fla. 2011).  Because Plaintiffs did not aver the existence of pre-suit notice, Plaintiffs warranty claims must be dismissed.

---

[8] Count II of the Complaint inadvertently references the provisions of the Florida Uniform Commercial Code pertaining to implied warranties.  It is apparent that Count II intends to aver that Defendant violated express warranties and the provisions of the Florida Uniform Commercial Code pertaining to the same, and accordingly the Defendant has responded to the citations contained in Count II as if they averred the provisions pertaining to express warranties.

### D. Plaintiffs Lack Standing and Fail to State a Claim Because They Plead No Injury-In-Fact.

Plaintiffs' FDUTPA and unjust enrichment claims should be dismissed with prejudice because Plaintiffs lack standing to bring those claims.  In order to have standing under Article III of the U.S. Constitution, as an "irreducible constitutional minimum" a plaintiff must plead and prove: (1) an "injury in fact;" (2) causation; and (3) redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  In order to establish the first prong, injury in fact, a plaintiff must show damage to "a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Id.* at 560 (internal citations and quotations omitted).

Plaintiffs do not allege a concrete and particularized injury – economic or otherwise – merely by claiming the product they purchased was composed of something different from what they expected. For instance, plaintiffs lacked standing in *Medley v. Johnson & Johnson*, No. 10-cv-02291, 2011 U.S. Dist. LEXIS 4627, *4-5 (D.N.J. Jan. 18, 2011), where they claimed they would not have bought shampoo had they known the shampoo contained methyl chloride:

> [T]he economic injury for which Plaintiffs seek redress is the price Plaintiffs paid for shampoo, which they then apparently used in bathing their children, without adverse health reactions. Whatever injury they claim to have suffered due to their subsequent discovery of methyl chloride in the shampoo could not, therefore, have been economic. Simply put, Plaintiffs bought and used shampoo, and subsequently wished that they had not done so because they feared for the future safety of their children...Plaintiffs received the benefit of their bargain so long as there were no adverse health consequences, and the product worked as intended….

*Medley*, 2011 U.S. Dist. LEXIS 4627 at *4-5.

Similar so-called "benefit of the bargain" theories of injury, where a plaintiff claims to have paid more for a product than the plaintiff would have paid had the plaintiff been fully informed (or that the plaintiff would not have purchased the product at all) do not confer

standing.  *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 956 (9th Cir. 2009) (affirming dismissal for lack of standing because the alleged economic harm, purchasing a product that was allegedly worth less than the purchase price, did not constitute an injury-in-fact).

In *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315 (5th Cir. 2002), for example, a plaintiff did not assert an injury-in-fact by pleading that she "would like her money back" after buying a painkiller the plaintiff subjectively considered hazardous upon learning of its composition. 283 F.3d at 319.  This "benefit of the bargain" theory of injury did not provide standing because the plaintiff received a product in exchange for the purchase price, and was not purchasing the product pursuant to a contract.  *Id.* at 319-21.  Similarly, in *Young*, 2012 WL 1372286 at *3, the plaintiff failed to allege injury-in-fact by pleading that he purchased an allegedly deceptively-named food product because he did not allege an "adverse health effect" or that the product "did not provide the advertised benefits."  Instead, the plaintiff simply claimed that he considered the product unhealthy upon learning it contained a particular ingredient.  But "subjective allegations that the presence of any amount of trans fat and partially hydrogenated oils renders Defendant's health claims misleading and Benecol unhealthy...are insufficient to establish injury-in-fact...." *Id.* at *4.

Here, Plaintiffs also plead no injury-in-fact because they claim to have bought a product and received the value of that product when they used it.  While Plaintiffs allege they would not have purchased the product had they known it was primarily apple and grape juice (which, as noted, are both identified on the ingredients list), *see* Complaint, ¶¶ 41, 47-48,), they do not claim to have suffered any adverse health effects from consuming the Juice, or that Wal-Mart advertised any particular benefit that the Juice did not deliver.  *Young*, 2012 WL 1372286 at *3. Rather, Plaintiffs allege only that pomegranate juice is believed to provide general health

benefits (while offering no such citations for cranberry juice, despite the appearance of the word "cranberry" before "pomegranate").  *See* Complaint, ¶¶ 25-27.

But the allegation that they would not have purchased a product does not mean Plaintiffs were injured by purchasing it.[9]   Plaintiffs instead simply plead their own subjective dissatisfaction with what they purchased, and lodge a subjective allegation that the Juice was personally unsatisfactory to them.  Such is not an injury-in-fact.  *Koronthaly v. L'Oreal USA, Inc.*, 374 Fed. Appx. 257, 259 (3d Cir. 2010) ("a subjective allegation that the trace amounts of lead in the lipsticks are unacceptable to [plaintiff] [is] not an injury-in-fact sufficient to confer Article III standing.").  Plaintiffs have no more of an injury than the plaintiffs in *Rivera* and *Young*, and therefore lack standing.

Just as Plaintiffs do not have standing, their lack of an injury-in-fact also precludes recovery under FDUTPA and unjust enrichment for failure to state a claim.  A properly pleaded FDUTPA claim requires "sufficient facts to show that [Plaintiffs have] been actually aggrieved by the unfair or deceptive act committed by the seller in the course of trade or commerce." *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1317 (M.D. Fla. 2000).  And as explained above, dismissal of Plaintiffs' FDUTPA claim necessarily results in dismissal of their unjust enrichment claim.  Plaintiffs have not pleaded sufficient facts from which the Court could plausibly conclude Plaintiffs have been injured.

### E.  Plaintiffs' Claims for Punitive and Treble Damages Must Be Dismissed.

Plaintiffs have requested an award of punitive damages in their claims for breach of warranty (Counts II and III). *See* Complaint, ¶¶ 113, 124.  Plaintiffs restate that request in their

---

[9] Plaintiffs allege they each purchased more than $25.00 worth of the product and that the product cost $2.78 per bottle.  Complaint, ¶¶ 1, 44). Therefore, it appears that they not only used the product but purchased it repeatedly.

Prayer for Relief, in which they also request treble damages.  However, there is no claim asserted anywhere in the Complaint that would support a request for punitive or treble damages. Each of these requests must be dismissed for failure to state a claim on which relief may be granted.

Under Florida law, Plaintiffs' claims for breach of warranty are in the nature of contract claims, and Plaintiffs have failed to adequately aver facts to support the existence of an intentional wrong or independent tort that would support a request for punitive damages.  *See Nicholas v. Miami Burglar Alarm Co., Inc.,* 399 So. 2d 175, 177 (Fla. 1976); *Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.*, 687 So. 2d 821, 822-23 (Fla. 1996); *Griffin v. Shamrock Village, Inc.*, 94 So. 2d 854 (Fla. 1957).   Damages for breach of contract claims are limited to the pecuniary loss sustained.  *See Stein v. Paradigm Mirasol, LLC*, 586 F.3d 849, 856 n.4 (11th Cir. 2009), *cert. denied*, 130 S.Ct. 1903 (2010); *G.M. Brod & Co. Inc. v. U.S. Home Corp.*, 759 F.2d 1526, 1536 (11th Cir. 1985).   Accordingly, Plaintiffs' requests for punitive or treble damages must be dismissed.


## CONCLUSION

Plaintiffs seek to effectively overturn federal regulations that govern food labeling, which aim to avoid inconsistent and confusing state-by-state regulation.   Just as clearly, Plaintiffs claims are preempted by those regulations.   In addition, Plaintiffs cannot avoid the safe harbor provision of FDUTPA, or satisfy each element with respect to unjust enrichment. Finally, Plaintiffs can show no standing in support of their claims.   Consequently, all counts in the Complaint must be dismissed with prejudice.

**Certification:** The undersigned certifies that he has conferred with counsel for Plaintiff in accordance with Northern District of Florida Local Rule 7.1(B), and that counsel for Plaintiff does not agree with the relief requested in this Motion.


WHEREFORE, Wal-Mart respectfully requests the Court dismiss with prejudice all counts in the Complaint.

Respectfully submitted,

_s/John Londot_
Barry Richard
John Londot
Florida Bar No. 579521
Greenberg Traurig, P.A.
101 East College Avenue
Tallahassee, FL 32301
Phone 850-222-6891
Fax 850-681-0207
londotj@gtlaw.com
hoffmanm@gtlaw.com

David E. Sellinger
(Pro Hac motion to be filed)
Greenberg Traurig LLP
200 Park Avenue
Florham Park, N.J.
Phone 973-360-7925
Fax 973-301-8410
_Attorneys for Defendant_
_Wal-Mart Stores, Inc._

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 2, 2014, the foregoing document was electronically filed with the Clerk of Court using CM/ECF, which will serve the following counsel of record:

> Tim Howard, J.D., Ph.D.
> Ankur Mehta, Esq.
> Howard & Associates, P.A.
> 2120 Killarney Way, Suite 125
> Tallahassee, FL 32309
> Phone 850-298-4455
> Fax 850-216-2537
> tim@howardjustice.com

> *s/John Londot*
> JOHN LONDOT