**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

IRA REYNOLDS and PATRICIA BELL individually and on behalf of all others similarly situated,

Case No. 4:14-cv-00381-WS-CAS

*Plaintiffs*,

v.

WAL-MART STORES, INC.,

*Defendant.*

---

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S AMENDED MOTION TO DISMISS**

---

Tim Howard, J.D., Ph.D.
Florida Bar No.: 655325
HOWARD & ASSOCIATES, P.A.
2120 Killarney Way, Suite 125
Tallahassee, FL 32309
Telephone: (850) 298-4455
Fax (850) 216-2537
tim@howardjustice.com

Andre M. Mura
CENTER FOR CONSTITUTIONAL LITIGATION, P.C.
777 6th Street, N.W., Suite 520
Washington, DC 20001
Telephone: (202) 944-2860
Fax: (202) 965-0920
andre.mura@cclfirm.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF CONTENTS ............ i

TABLE OF AUTHORITIES ............ iii

INTRODUCTION ............ 1

BACKGROUND ............ 4

ARGUMENT ............ 5

I. WAL-MART CANNOT ESTABLISH THAT PLAINTIFFS' SUIT IS EXPRESSLY PRE-EMPTED. ............ 5

A. The NLEA's Express Pre-Emption Provision Is Narrow in Scope. ............ 7

B. This Express Pre-emption Provision Does Not Bar Plaintiffs' State-Law Suit. ............ 11

1. Wal-Mart's juice name does not comply with applicable federal regulations. ............ 12

2. No statutory or regulatory provision specifically requires or authorizes many of the challenged features of the label—including the vignette, and the juice name's placement, lettering, type-size, and spacing. ............ 15

II. PLAINTIFFS HAVE STATED ACTIONABLE CLAIMS UNDER FLORIDA LAW. ............ 20

A. Wal-Mart Cannot Invoke the FDUPTA's Safe Harbor Provision Because Its Labeling Violates Federal Law and Is Otherwise Not Specifically Permitted by Federal Law. ............ 20

B. Wal-Mart's Request to Dismiss Plaintiffs' Unjust Enrichment Claim Fails. ............ 21

C. Plaintiffs Provided Adequate Pre-Suit Notice. ............ 23

D. Plaintiffs Have Standing to Assert Consumer Protection Claims Relating to Products They Purchased. ............ 23

E. Plaintiffs' Request for Punitive or Treble Damages Is Not a Claim Subject to Dismissal Under Rule 12(b)(6). ............ 24

CONCLUSION ........................................................ 25

CERTIFICATE OF SERVICE ........................................................ 26

## TABLE OF AUTHORITIES

**Cases**

*Adelphia Cable Partners, Inc. v. E & A Beepers Corp.*, 188 F.R.D. 662 (S.D. Fla. 1999) ........ 22

*Altria Group, Inc. v. Good*, 555 U.S. 70 (2008) ........ 9

*Bausch v. Stryker Corp.*, 630 F.3d 546 (7th Cir. 2010) ........ 19, 20

*Bruesewitz v. Wyeth LLC*, 131 S. Ct. 1068 (2011) ........ 11

*Cohen v. Office Depot, Inc.*, 184 F.3d 1292 (11th Cir. 1999), *vacated in part on other grounds by* 204 F.3d 1069 (11th Cir. 2000) ........ 24

*Degirmenci v. Sapphire-Fort Lauderdale, LLLP*, 693 F. Supp. 2d 1325 (S.D. Fla. 2010) ........ 22

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000) ........ 23

*Garcia v. Kashi Co.*, No. 12-21678, 2014 WL 4392163 (S. D. Fla. Sept. 25, 2014) . 22, 23

*Grossman v. Nationsbank, N.A.*, 225 F.3d 1228 (11th Cir. 2000) ........ 4

*Johnson v. City of Shelby*, 135 S. Ct. 346 (2014) ........ 25

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) ........ 11

*New York State Restaurant Association v. NewYork City Board of Health*, 509 F. Supp. 2d 351 (S.D.N.Y 2007) ........ 10

*PLIVA v. Mensing*, 131 S. Ct. 2567 (2011) ........ 8, 18

*Plumley v. Massachusetts*, 155 U.S. 461 (1894) ........ 11

*Pom Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228 (2014) ........ 8, 12

*Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228 (S.D. Fla. 2007) ........ 20, 21

*Rathbone v. Haywood County*, No. 1:08-cv-117, 2008 WL 2789770 (W.D.N.C. July 17, 2008) ........ 25

*Samet v. Procter & Gamble Co.*, No. 5:12-cv-01891 (PSG), 2013 WL 3124647 (N.D. Cal. June 18, 2013) ........ 24

*Scarfo v. Ginsberg*, 175 F.3d 957 (11th Cir. 1999) .......... 5

*Schmidt v. C.R. Bard, Inc.*, No. 6:14-cv-62, 2014 WL 5149175 (S.D. Ga. Oct. 14, 2014) .......... 25

*Sea Vessel, Inc. v. Reyes*, 23 F.3d 345 (11th Cir. 1994) .......... 5

*Smith v. W.M. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336 (S.D. Fla. 2009) .......... 24

*St. George v. Pinellas County*, 285 F.3d 1334 (11th Cir. 2002) .......... 4

*Toback v. GNC Holdings, Inc.*, No. 13-80526-CIV, 2013 WL 5206103 (S.D. Fla. Sept. 13, 2013) .......... 24

*Williams v. Bear Stearns & Co.*, 725 So. 2d 397 (Fla. 5th DCA 1998) .......... 22

*Wyeth v. Levine*, 555 U.S. 555 (2009) .......... 8, 11, 14

**Statutes**

15 U.S.C. § 45(a)(2) .......... 7

15 U.S.C. § 52(a) .......... 7

21 U.S.C. §§ 301 *et seq* .......... 7

21 U.S.C. § 321(f) .......... 7

21 U.S.C. § 331(a) .......... 7

21 U.S.C. § 331(c) .......... 7

21 U.S.C. § 337(a) .......... 9

21 U.S.C. § 341 .......... 7

21 U.S.C. § 343(a)(1) .......... *passim*

21 U.S.C. § 343(f) .......... 7, 17

21 U.S.C. § 343(i)(1) .......... 7

21 U.S.C. § 343-1(a) .......... 9, 10, 11

21 U.S.C. § 355(d) .......... 9

Fla. Stat. §§ 501.201 *et seq.* .......... 4

Pub L. No. 101-535, 104 Stat. 2353 .......... 7, 10

**Other Authorities**

136 Cong. Rec. H12951-02, 1990 WL 290331 (Oct. 26, 1990) .......... 9

136 Cong. Rec. S16607-02, 1990 WL 206648 (Oct. 24, 1990) .......... 9

Brief for the United States as Amicus Curiae, *Pom Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228 (2014), 2014 WL 827980 .......... *passim*

FDA, *A Food Labeling Guide* (Jan. 2013) .......... 12, 15

Warning Letter of Roberta F. Wagner, FDA, to Brad Alford, Nestle U.S.A. (Dec. 4, 2009) .......... 2, 3, 8, 17

**Rules**

Fed R. Civ. P. 12(b)(6) .......... 4, 19, 24

Fed. R. Civ. P. 12(b)(1) .......... 4, 5

Fed. R. Civ. P. 15(a)(2) .......... 25

Fed. R. Civ. P. 8 .......... 24

Fed. R. Civ. P. 8(a) .......... 22

**Regulations**

21 C.F.R. § 101.15(a) .......... 17, 21

21 C.F.R. § 101.2(c) .......... 17

21 C.F.R. § 101.22(i) .......... 18

21 C.F.R. § 101.22(i)(1)(1) .......... 18

21 C.F.R. § 101.22(iii) .......... 18

21 C.F.R. § 101.3(d) .......... 17

21 C.F.R. § 102.33 .......... 7, 12, 14

21 C.F.R. § 102.33(c) .......... 17, 18

21 C.F.R. § 102.33(d) .......... 12, 17, 18

21 C.F.R. § 102.33(d)(1) ........ 12, 13, 16

21 C.F.R. § 102.33(d)(2) ........ *passim*

21 C.F.R. § 102.33(g)(1) ........ 17, 19

21 C.F.R. § 102.5(b)(2) ........ 17, 19

56 Fed. Reg. 60528 (Nov. 27, 1991) ........ 10

58 Fed. Reg. 2897 (Jan. 6, 1993) ........ *passim*

Plaintiffs Ira Reynolds and Patricia Bell, individually and on behalf of all others similarly situated, respectfully request that this Court deny Defendant Wal-Mart Stores, Inc.'s Motion to Dismiss.

## INTRODUCTION

Plaintiffs are consumers of Wal-Mart's Great Value 100% Cranberry Pomegranate Flavored Juice Blend. They purchased this product believing, based on labeling, that it contains substantial amounts of cranberry and pomegranate juice, which many consumers believe provide certain health benefits that other fruit juices, such as apple and grape juice, do not. In reality, however, this product contains far less cranberry and pomegranate juice than labeling suggests, and is primarily apple and grape juice.

The label is misleading in several ways. As you can see in the picture of the product, attached as Exhibit 1, the principal display panel identifies the product as "Cranberry" and "Pomegranate" in large, bold lettering in white print, and these words appear directly below the word "100%," which is in the same large, bold-white lettering. The statement "100%" directly next to "Cranberry" and "Pomegranate" suggests that the product is 100% Cranberry and Pomegranate, when it is not. Moreover, these words are set on a vignette depicting oversized cranberries and halved pomegranates floating in a gushing stream of juice the color of cranberry and pomegranate. This vignette reinforces the consumer perception that the product is predominantly—indeed 100%—cranberry and pomegranate, as these are the *only* fruits depicted there. Lastly, the separate statement "Flavored Juice Blend" appears in smaller font and white print on this colored background, and is located below the larger-sized word "Pomegranate." In an even smaller type-size, and just below

this statement, are the words "From concentrate with added ingredients. This statement is split into two lines of text; in the second, the words "with added ingredients" overlay a part of the vignette that makes this statement particularly hard to read. The manner in which these statements—"Flavored Juice Blend" and "From concentrate with added ingredients"—are presented make them less conspicuous and prominent than other label statements and the vignette, and therefore less likely to be read or understood by consumers at the time of purchase.

The Food and Drug Administration ("FDA") has concluded that similar, multiple-juice products with a common or usual name declaring that the named juices are not the predominant juices but are present as flavor or flavoring are misbranded under 21 U.S.C. § 343(a)(1) if they mislead consumers into believing that the named juices are the predominant juices. *E.g.*, Warning Letter of Roberta F. Wagner, FDA, to Brad Alford, Nestle U.S.A. (Dec. 4, 2009) (hereinafter "FDA Warning Letter to Nestle"),[1] attached as Exhibit 2. In a warning letter to Nestle, the manufacturer of an Orange Tangerine juice product and Grape juice product, the FDA explained that these products were misbranded because their labels misleadingly conveyed to consumers that the named juices were the predominant juices, when in fact they were not:

> The label of the Orange Tangerine product is designed to imply that the product is 100% orange/tangerine juice, and the label of the Grape product is designed to imply that product is 100% grape juice. The principal display panels identify the products as "Orange Tangerine" and "Grape," respectively, in large, bold lettering outlined in black; however, neither orange/tangerine juice nor grape juice is

[1] *Available at* http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm194122.htm.

> the predominant juice in the products. The statements "All Natural-100% Juice" in close proximity to the words "Orange Tangerine" or "Grape" and vignettes of oranges or grapes also may lead consumers to believe that the products are 100% orange/tangerine juice or 100% grape juice when, in fact, they are not. The separate statement at the base of the respective principal display panels, "Flavored juice blend from concentrate with other natural flavors & added ingredients," appears in a smaller font and white print on a colored background. The manner in which the latter statement is presented makes it less conspicuous and prominent than the other label statements and vignettes and therefore less likely to be read or understood by consumers at the time of purchase.

*Id.*

These misleading labels bear striking resemblance to the label at issue here. Like Nestle's juice labels, Wal-Mart's juice label is misleading based on the relative placement, lettering, type-size, spacing, and other like features, such as the vignette.

If anything, Wal-Mart's juice label is even more misleading. In the Nestle labels, the "100%" statement was not part of the juice name, and the FDA did not conclude that the juice *names* of these Nestle products were misleading. *See id.* By contrast, as Wal-Mart itself admits, "100%" is part of its juice name. Wal-Mart Amended Mot. to Dismiss 9 n.5. Thus, Wal-Mart's juice name does not comply with federal requirements and is misleading in violation of state law.[2]

[2] Wal-Mart repeatedly states that "Plaintiffs concede that the label complied with the applicable federal regulations." Wal-Mart Amended Mot. to Dismiss 2; *see id.* at 12, 16. Of course, there has been no concession. To date, Plaintiffs have simply filed a Complaint seeking relief under state law; there, Plaintiffs explain that they are not seeking to enforce the FDCA. Compl. ¶ 32. Plaintiffs here, for the first time, address Wal-Mart's compliance with federal law and clearly state their position: Wal-Mart's label does not comply with applicable federal regulations.

**BACKGROUND**

Plaintiffs filed this putative class action, alleging that Wal-Mart's Great Value 100% Cranberry Pomegranate Flavored Juice Blend product, including its name, labeling, and packaging design, is false, deceptive, and misleading in violation of Florida's Consumer Protection Statute, and Florida's Deceptive and Unfair Trade Practice Act ("FDUTPA"), §§ 501.201 *et seq*., Florida Statutes, and that these violations stem from violations of Florida's Food Safety Act. *E.g*., Compl. ¶¶ 12-13, 52-61, 92-105. In addition, Plaintiffs assert claims for common law breach of warranty, breach of implied warranty under the Uniform Commercial Code, and unjust enrichment. *Id.* at ¶¶ 13, 106-130. Plaintiffs seek monetary damages for themselves and proposed class members, and other relief as permitted by law. *See id.* at pp. 27-28 (prayer for relief).

Wal-Mart seeks dismissal with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). First, it seeks dismissal under Rule 12(b)(6) on the theory that Plaintiffs' traditional, state-law, consumer protection suit is expressly pre-empted by federal law governing juice labeling and advertising. In addition, Wal-Mart advances several other reasons why, in its view, Plaintiffs have failed to state a claim.[3] Second, it seeks dismissal under Rule 12(b)(1) on the belief that the Court lacks subject-matter

---

[3] Motions to dismiss under Rule 12(b)(6) are granted in the rare instance that the Plaintiff has failed to state a claim upon which relief may be granted. Fed. R. Civ. P.12(b)(6). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted). In addition, all "reasonable inferences" are to be drawn in favor of the plaintiff. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

jurisdiction. According to Wal-Mart, Plaintiffs lack standing to bring these consumer protection claims.[4]

Wal-Mart's Motion is wrong in every respect except one: Wal-Mart is right that Plaintiffs are not entitled to recover punitive or treble damages based on the claims they have asserted. The Court, accordingly, may strike those portions of the Complaint requesting punitive or treble damages. Wal-Mart's other bases for dismissal are without merit, however. The Court, therefore, should deny Wal-Mart's Motion to Dismiss.

## ARGUMENT

### I. WAL-MART CANNOT ESTABLISH THAT PLAINTIFFS' SUIT IS EXPRESSLY PRE-EMPTED.

Wal-Mart's pre-emption defense has no leg to stand on. Federal juice-labeling law's pre-emptive reach is quite limited, and Plaintiff's misbranding suit lies outside its narrow ambit. Wal-Mart's arguments to the contrary rest on a misunderstanding of federal juice-labeling law, and a mischaracterization of Plaintiffs' factual allegations.

Plaintiffs respond in detail below, but in summary: Congress, by adopting a limited express pre-emption provision which identifies select federal requirements as having pre-emptive effect, took care to preserve certain state authority over food labeling. Most critically, the federal duty not to sell "misbranded" food—which is defined in part as food with false or misleading labeling in any particular—is *not* a federal requirement identified

---

[4] Motions to dismiss under Rule 12(b)(1) are either facial or factual challenges to the complaint. *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999). Defendant's Motion appears to be a facial challenge. For facial attacks, the allegations in the complaint are taken as true for the purposes of the motion. *Sea Vessel, Inc. v. Reyes*, 23 F.3d 345, 347 (11th Cir. 1994).

by Congress as having pre-emptive effect. This means that federal juice-labeling law does not bar a state-law claim that a juice label is false or misleading as a whole, or in a respect not specifically required or authorized by a federal statute or regulation with pre-emptive effect. Moreover, federal law only bars state-law requirements that are not identical to the federal-law requirements explicitly identified in an express pre-emption clause. A state-law claim challenging a label as misleading is not barred to the extent it seeks to enforce a requirement *identical* to a federal requirement.

Wal-Mart, accordingly, can only show that Plaintiffs' state-law suit is pre-empted if it establishes two things: first, that *each* of Plaintiffs' claims involves an aspect of juice labeling specifically authorized or required by a federal statute or regulation with pre-emptive effect; and second, that Wal-Mart is in compliance with *all* these federal requirements. Wal-Mart, however, cannot make these showings.

Federal regulations establish certain naming conventions for multiple-juice beverages. Wal-Mart's juice name does not comply with these regulations. Wal-Mart, not surprisingly, disagrees. But even if Wal-Mart were correct about its compliance, that would only mean that its juice *name* is not misleading. As the FDA itself recognizes, compliance with juice-naming regulations does not eliminate the potential for a label to mislead in other ways; the name authorized by federal regulations still may be insufficiently prominent or conspicuous or may be misleading for reasons other than those specifically enumerated by federal law. That is the case here.

No statutory or regulatory provision specifically requires or authorizes many of the features of the label challenged by Plaintiffs—including the vignette, and the juice name's

placement, lettering, type-size, and spacing. These aspects of Wal-Mart's juice label are therefore actionable under state law.

All in all, dismissal based on pre-emption is inappropriate.

**A. The NLEA's Express Pre-Emption Provision Is Narrow in Scope.**

In 1990, Congress amended the Federal Food, Drug, and Cosmetic Act ("FDCA"), ch. 675, 52 Stat. 1040 (codified as amended at 21 U.S.C. §§ 301 *et seq.*), to address nutrition labeling for most food products, including juices. National Labeling and Education Act of 1990 ("NLEA"), Pub L. No. 101-535, 104 Stat. 2353. Relevant here, the FDCA bans the introduction into or receipt in interstate commerce of "misbranded" foods. 21 U.S.C. § 331(a) and (c); *see also* § 321(f) (defining food to include any "article[] used for food or drink for man"). A food is misbranded if "its labeling is false or misleading in any particular," § 343(a)(1); if required information is not sufficiently prominent and conspicuous on the label or labeling, § 343(f); or if its label fails to bear "the common or usual name of the food, if any there be, and . . . in case it is fabricated from two or more ingredients, the common or usual name of each such ingredient," § 343(i)(1).

The Federal Trade Commission and the Food and Drug Administration share enforcement authority over deceptive food labeling, advertising, and promotion. *See* 15 U.S.C. §§ 45(a)(2), 52(a). The FDA, in particular, has regulated many aspects of juice naming and labeling in order to "promote honesty and fair dealing in the interest of consumers." 21 U.S.C. § 341; *see, e.g.*, 58 Fed. Reg. 2897-2926 (Jan. 6, 1993). This includes, for example, regulations governing "the common or usual name" for multiple-juice beverages. 21 C.F.R. § 102.33.

While the FDA's regulations touch on many aspects of juice labeling and advertising, the FDA itself has acknowledged that its regulations do not "mark[] the metes and bounds of all possible misleading material on juice labels." Brief for the United States as Amicus Curiae 26, *Pom Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228 (2014), 2014 WL 827980, at *26 (hereinafter "SG Br.").[5] Manufacturers retain considerable discretion in designing labeling. Under the FDCA, primary responsibility for honest and accurate labeling rests with manufacturers, not the FDA. *Cf. Wyeth v. Levine*, 555 U.S. 555, 579 (2009) (addressing drug labeling under the FDCA); *see also* FDA Warning Letter to Nestle, *supra*, at 1 ("It is your responsibility to ensure that all of your products are in compliance with the laws and regulations enforced by FDA.").

The FDA, moreover, "does not have a process for approving particular juice labels." SG Br. 29 n.12, 2014 WL 827980, at *29 n.12; *see Pom Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2235 (2014) (crediting this representation and further noting:

[5] This brief relies on and refers to the FDA's interpretation of its own regulations, as described in the agency's briefing in recent litigation before the Supreme Court. Although *Pom Wonderful* concerned whether the FDCA precludes an unfair competition claim under the federal Lanham Act, *see* 134 S. Ct. at 2236, all the parties, including the FDA appearing as an amicus curiae and speaking through the Solicitor General, addressed the pre-emptive scope of federal juice-labeling law. Pre-emption of state law was relevant because Pom Wonderful argued that, if state-law protection claims are consistent with the FDCA, then a misbranding claim under the federal Lanham Act must also be consistent with the FDCA. Coca-Cola argued the exact opposite. And the FDA argued that neither was completely right; some Lanham Act claims and state unfair-competition claims are actionable, and some are not. Ultimately, the Supreme Court concluded that Lanham Act claims are in no way precluded by the FDCA. *Id.* at 2241-42. Even so, the FDA's interpretation of its juice-labeling regulations, as described in briefing there, is reasonable and warrants deference. *See PLIVA v. Mensing*, 131 S. Ct. 2567, 2574 (2011) ("The FDA's views are 'controlling unless plainly erroneous or inconsistent with the regulation[s]' or there is any other reason to doubt that they reflect the FDA's fair and considered judgment." (citation omitted; alteration in original)).

"That contrasts with the FDA's regulation of other types of labels, such as drug labels, *see* 21 U.S.C. § 355(d), and is consistent with the less extensive role the FDA plays in the regulation of food than in the regulation of drugs."). If it concludes that a food is misbranded, the FDA may bring an enforcement action against a manufacturer, but the FDA's "failure to initiate an enforcement action cannot be construed as implicit approval." SG Br. 29 n.12, 2014 WL 827980, at *29 n.12 (citing *Altria Grp., Inc. v. Good*, 555 U.S. 70, 89 (2008) ("agency nonenforcement of a federal statute is not the same as a policy of approval")).

Violations of the FDCA are not privately enforceable. *See* 21 U.S.C. § 337(a). States, however, retain some measure of regulatory authority over the descriptive content of food labeling. Congress addressed the precise scope of federal and state authority in the NLEA. It did so through an express pre-emption clause that identifies twelve specific areas in which federal requirements pre-empt non-identical state-law requirements. 21 U.S.C. § 343-1(a). For example, federal regulations addressing a label's nutrition panel, ingredient lists, common name, and percentage-of-juice statements have pre-emptive effect. *Id.* The limited reach of this preemption clause shows that Congress took care to preserve certain state tort suits.[6]

[6] This express pre-emption provision was added to the NLEA to encourage the food industry to back the bill. 136 Cong. Rec. H12951-02, H12954, 1990 WL 290331 (Oct. 26, 1990) (Rep. Waxman). Its limited scope reflected congressional "sensitiv[ity] to the regulatory roles played by the States." 136 Cong. Rec. S16607-02, S16609, 1990 WL 206648 (Oct. 24, 1990) (Sen. Mitchell). As Senator Mitchell explained: The preemption clause was "refined to provide national uniformity where it is most necessary, while otherwise preserving State regulatory authority where it is appropriate." *Id.* at S16609.

Two key features of the NLEA's express pre-emption clause are relevant here. First, there can be no pre-emption of state-law challenges to any aspect of food labeling apart from the twelve specific topics which the statute itself identifies as having pre-emptive effect. *See id.* Congress clearly and manifestly expressed an intention that the NLEA would not pre-empt state law beyond the law's express terms:

> The Nutrition Labeling and Education Act of 1990 shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A [21 U.S.C. § 343-1(a)] of the Federal Food, Drug, and Cosmetic Act.

Pub. L. No. 101-535, § 6(c)(1), 104 Stat. 2353, 2364 (codified as amended at 21 U.S.C. § 304-1 note). In other words, "[t]he NLEA explicitly forecloses the possibility that state law would be impliedly preempted." *N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health*, 509 F. Supp. 2d 351, 355 (S.D.N.Y 2007). As the FDA has explained: "If there is no applicable Federal requirement that has been given preemptive status by Congress, there is no competing claim of jurisdiction, and, therefore, no basis under the 1990 amendments for Federal preemption." 56 Fed. Reg. 60528, 60530 (Nov. 27, 1991).

The federal requirement that forbids manufacturers from selling "misbranded" food, which is defined in part as food with false or misleading labeling in any particular, 21 U.S.C. § 343(a)(1), is not among those federal requirements identified by Congress as having pre-emptive effect. *See id.* at § 343-1(a). This means that the NLEA does not bar a state-law claim that a juice label is false or misleading as a whole, or in a respect not specifically required or authorized by a federal statute or regulation given pre-emptive status by Congress.

Second, the NLEA, by its terms, preserves state laws that impose requirements "identical" to the specified federal requirements. *Id.* State law may hold a manufacturer that does not comply with federal requirements accountable under an identical state requirement. *See id.*

**B.      This Express Pre-emption Provision Does Not Bar Plaintiffs' State-Law Suit.**

Pre-emption is ultimately a question of Congress's intent. *Levine*, 555 U.S. at 565. In express pre-emption cases like this, a court's analysis must "start with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (internal quotation marks omitted). That presumption is particularly strong here given the long history of state regulatory authority over food products, *Plumley v. Massachusetts*, 155 U.S. 461, 472 (1894) (recognizing state authority to regulate "fraud and deception in the sale of food products"); and given that pre-emption here would leave consumers of fraudulent and deceptive food products without a remedy, *see Bruesewitz v. Wyeth LLC*, 131 S. Ct. 1068, 1080 (2011) (recognizing the Court's longstanding doubt that Congress would quietly eliminate state remedies without providing a federal substitute).

Given the narrow sweep of the NLEA's express pre-emption clause, Wal-Mart can only show that Plaintiffs' state-law suit is pre-empted if it proves two things: first, that *each* of Plaintiffs' claims involves an aspect of juice labeling specifically authorized or required by a federal statute or regulation with pre-emptive effect; and second, that Wal-Mart is in compliance with *all* these federal requirements. *See* 21 U.S.C. § 343-1(a). Wal-Mart, however, cannot make this showing.

**1. Wal-Mart's juice name does not comply with applicable federal regulations.**

Regulations concerning the "common or usual name" for multiple-juice beverages, 21 C.F.R. § 102.33, have pre-emptive effect, *see* 21 U.S.C. § 343-1(a). But Wal-Mart's juice name does not comply with these requirements.

The FDA has provided two different ways to indicate that named juices—here, Cranberry and Pomegranate—are neither predominant nor the only juices present. *See* 21 C.F.R. § 102.33(d). The first is to indicate that the named juice is present as flavor or flavoring. 21 C.F.R. § 102.33(d)(1). This regulation does not require or authorize percentage declarations of the named juice. *See* 58 Fed. Reg. at 2920; *see* SG Br. 21-22, 2014 WL 827980, at *21-22. Thus, "a 100 percent juice consisting of apple, grape and raspberry juices, in which raspberry juice provides the characterizing flavor, and bears a vignette that only depicts raspberries, would not necessarily be misleading if the identity statement were 'raspberry juice blended with apple and grape juices.'" FDA, *A Food Labeling Guide* 12 (Jan. 2013), *available at* http://www.fda.gov/downloads/food/guidanceregulation/ucm265446.pdf (citing 58 Fed. Reg. at 2921). *See generally*, *POM Wonderful*, 134 S. Ct. at 2234-35.

By contrast, the second way to indicate that named juices are not predominant or the only juice present is to include the amount of the named juice, declared in a 5-percent range. 21 C.F.R. § 102.33(d)(2); *see* FDA, *A Food Labeling Guide* 12 ("raspberry juice in a blend of two other juices, 3 to 8 percent raspberry juice").

Wal-Mart isn't quite sure what its juice is named; no wonder there is consumer confusion. Previously it insisted that the name was "100% Cranberry Pomegranate

Flavored Juice Blend." Wal-Mart Mot. to Dismiss 9 n.5 (emphasis removed). Now Wal-Mart insists that the name is "100% Cranberry Pomegranate Flavored Juice Blend from Concentrate with Added Ingredients."[7] Wal-Mart Amended Mot. to Dismiss 9 n.5 (emphasis removed). Here, Wal-Mart capitalizes letters that are not even capitalized on the label itself. *Compare* Compl. ¶ 28.

In any event, Wal-Mart's use of "100%" in the name of its juice is neither permitted nor authorized by 21 C.F.R. § 102.33(d)(1). *See also* 58 Fed. Reg. at 2920 (noting that the FDA declined to adopt percentage declarations if a juice is named in accordance with this provision); *accord* SG Br. 22, 2014 WL 827980, at *22. Instead, Wal-Mart's use of "100%" violates 21 C.F.R. § 102.33(d)(2), not to mention the federal misbranding prohibition against false and misleading labeling, 21 U.S.C. § 343(a)(1).[8] This is not a declaration of the amount of the named juice, declared in a 5-percent range. *See id.* Wal-Mart appears to suggest that "100%" is intended to refer to the fact that this product is 100% juice. *See* Wal-Mart Amended Mot. to Dismiss 9. But that is an absurd way to read *this* label; in normal English usage, "100%" obviously modifies the nouns—Cranberry and Pomegranate—that immediately follow it. Wal-Mart's insertion of "100%" directly above "Cranberry" and two lines above "Pomegranate" (and in the same type-size) misleadingly

[7] Plaintiffs believe the full name is "Great Value 100% Cranberry Pomegranate Flavored Juice Blend." That is the name on the label on the bottle purchased by Plaintiffs, *see* Compl. ¶ 28, and that is what Wal-Mart itself calls its juice on its website, *available at* http://www.walmart.com/ip/Great-Value-100-Cranberry-Pomegranate-Flavored-Juice-Blend-64-oz/19758062, also attached as Exhibit 3.

[8] For its part, Wal-Mart does *not* argue that its juice name complies with § 102.33(d)(2). *See* Wal-Mart Amended Mot. to Dismiss 9.

suggests that these are the sole, if not the predominant, juices in the juice blend. In other words, the use of "100%" here undermines 21 C.F.R. § 102.33(d)'s twin juice-naming conventions, which exist precisely to make clear that named juices do *not* predominate and are *not* the only juices present.[9] In essence, the statement "100%" here serves only one purpose: to mislead.

For all these reasons, Wal-Mart is not in compliance with the applicable juice-naming regulations, and thus it cannot rely on them as a basis for pre-emption. Even if Wal-Mart were correct about its compliance, however, that would only mean that its juice *name* is not misleading. Compliance with juice-naming regulations does not eliminate the potential for a label to mislead; the name authorized by federal regulations still may be insufficiently prominent or conspicuous or may be misleading for reasons other than those specifically enumerated by federal law.[10] 58 Fed. Reg. at 2920 (stating that although 21 C.F.R. § 102.33 permits the primary declaration of a characterizing juice even if it is not the most predominant juice, "there is great potential for [such a] label to misrepresent the contribution of the named juice to the product" and that "this provision does not relieve the

---

[9] The words "Great Value" only add to this consumer confusion. *See* Compl. ¶¶ 1, 44, 47. Moreover, the regulations simply do not address this statement, other than to prohibit manufacturers from selling juices with labels that are misleading "in any particular." *See* 21 U.S.C. § 343(a)(1).

[10] Wal-Mart suggests that Plaintiffs are being "vague" about what an adequate label would look like. Wal-Mart Amended Mot. to Dismiss 11. Plaintiffs are under no obligation to propose adequate labeling. The question in this consumer protection case is not what an adequate label would look like; the question is whether Wal-Mart's label is false or misleading under Florida law. A jury verdict in this case would establish only that fact; it would not mandate any particular labeling. *Cf. Levine*, 555 U.S. at 565 ("the [Vermont] jury verdict established only that Phenergan's warning was insufficient. It did not mandate a particular replacement warning.").

manufacturer of the obligation to label the product in a truthful and nonmisleading manner."). As Plaintiffs demonstrate next, that is the case here.

**2. No statutory or regulatory provision specifically requires or authorizes many of the challenged features of the label—including the vignette, and the juice name's placement, lettering, type-size, and spacing.**

Plaintiffs have also alleged that the vignette, and the juice name's placement, lettering, type-size, and spacing misled them into believing that it consists of pomegranate and cranberry juice, when in reality it consists mainly of apple and grape juice. The FDA has not formally regulated *any* of these features of this juice label.

Consider first the vignette on Wal-Mart's juice label, which Plaintiffs allege is misleading in violation of Florida law. *E.g.*, Compl. ¶¶ 28, 31. Nothing in the FDCA or its implementing regulations bars that claim. As the FDA itself has explained, the agency "specifically considered whether to formally regulate the content of such vignettes and ultimately opted for a case-by-case assessment." SG Br. 26, 30 n.14, 2014 WL 827980, at *30 n.14 (concluding that Pom Wonderful's Lanham Act claim that a label's fruit vignette is misleading is not precluded by the FDCA because the FDA does not formally regulate vignettes); 58 Fed. Reg. at 2922 ("[FDA] will determine on a case-by-case basis whether a vignette is misleading because it is not consistent with other label information or for other reasons."); FDA, *A Food Labeling Guide* 12 ("FDA has not established specific requirements for vignettes on labels of juice beverages."). With no federal requirement concerning vignettes, let alone one with pre-emptive effect, Plaintiffs' state-law misbranding claim based on Wal-Mart's misleading vignette is actionable.

Wal-Mart inaccurately cites language in a preamble to a final juice-labeling regulation in support of its argument that the FDA has authorized its vignette. Wal-Mart Amended Mot. to Dismiss 9 (citing 58 Fed. Reg. at 2921 ¶ 52). Contrary to Wal-Mart's submission, however, the preamble confirms that vignettes are not formally regulated. As the FDA itself has explained, this "preamble . . . makes clear that even when a manufacturer complies with 21 C.F.R. § 102.33, there remains considerable potential for particular labels to prove misleading." SG Br. 26, 2014 WL 827980, at *26 (citing 58 Fed. Reg. at 2920). Vignettes, according to the FDA, are one way in which a label can mislead; whether a vignette is misleading is assessed on a case-by-case basis. *Id.* (citing 58 Fed. Reg. at 2922); *see also Id.* at 30 n.14, 2014 WL 827980, at *30 n.14 (concluding that the district court was wrong to rely on the preamble to the final rule as evidence that the FDA has formally regulated vignettes; it has not).[11]

Consider next the juice name's *presentation* on the label, including its placement, lettering, type-size, and spacing—all features which misled Plaintiffs in violation of Florida law. *E.g.*, Compl. ¶¶ 42-43. All the FDCA says in regards to label presentation is that a

[11] The preamble says that "a vignette depicting raspberries would *not necessarily* be misleading if the statement of identity were 'raspberry juice in a blend of apple and grape juice.'" 58 Fed. Reg. at 2921 ¶ 52 (emphasis added). This statement concerns a vignette on a label with a common or usual name consistent with 21 C.F.R. § 102.33(d)(1), with which Wal-Mart purports to be in compliance. *See* Wal-Mart Amended Mot. to Dismiss 9. In its memorandum, however, Wal-Mart quotes the next sentence, which concerns a vignette on a label with a common or usual name consistent with 21 C.F.R. § 102.33(d)(2), even though Wal-Mart never says its juice name is in compliance with subpart (d)(2). (Nor could it. *See supra* pp. 12-15). Presumably, Wal-Mart prefers this second sentence because it lacks the qualifier "not necessarily." *See* Wal-Mart Amended Mot. to Dismiss 9. Wal-Mart's word games aside, federal law is clear: vignettes are not formally regulated.

food is misbranded if required label material (such as a juice name) "is not prominently placed [on the label] with such conspicuousness . . . as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase." 21 U.S.C. § 343(f). The regulations describe certain ways in which label material "may lack that prominence and conspicuousness." 21 C.F.R. § 101.15(a); *see id.* at §§ 101.2(c), 101.3(d). But, insofar as multiple-juice products like Wal-Mart's are concerned, the FDA has *not* adopted presentation standards for every word in a juice name, including words like "blend" and "flavored." *See* SG Br. 29, 2014 WL 827980, at *29 (citing 21 C.F.R. §§ 102.33(c) and (d)). It has only adopted presentation standards for percentage declarations and the words "from concentrate." *Id.* (citing 21 C.F.R. §§ 102.33(d)(2) and (g)(1), 102.5(b)(2)). In the absence of presentation standards addressing every word in a juice name, the FDA considers on a case-by-case basis whether a product is misbranded under 21 U.S.C. § 343(a)(1) because its label is misleading based on the name's placement, lettering, type-size, and spacing. *E.g.*, FDA Warning Letter to Nestle, at 1.

For this reason, the FDA has expressly warned manufacturers that compliance with the juice-naming regulation does not eliminate the possibility that the presentation of the name on the label may nonetheless be misleading. 58 Fed. Reg. at 2920. "[I]nformation on a food label may be insufficiently prominent or conspicuous, or misleading, *for 'reasons' 'other' than* those specifically enumerated." SG Br. 30, 2014 WL 827980, at *30 (emphasis added) (citing in part 21 C.F.R. § 101.15(a)).

Wal-Mart carries the burden of establishing that the labeling features challenged here—placement, lettering, type-size, and spacing of its juice name—are authorized or

required by a pre-emptive regulation. Yet it identifies only *one* such regulation addressing relative prominence, concerning the type-size of the word "flavored." Wal-Mart Amended Mot. to Dismiss 10 (citing 21 C.F.R. § 101.22(i)(1)(1) and (iii)). But even this single regulation cannot establish pre-emption. The FDA has concluded that the type-size requirements set forth in 21 C.F.R. § 101.22(i) have "no logical application" to multiple-juice products with a common or usual name that, pursuant to 21 C.F.R. § 102.33(d), already declares that named juices are not the predominant juices but are present as flavor or flavoring. SG Br. 31-32, 2014 WL 827980, at *31-32. Insofar as multiple-juice products like Walmart's are concerned, "[t]he FDA . . . has not adopted absolute or relative type-size requirements for every word in a juice name," including words like "blend" or "flavored." *Id.* at 29 (citing 21 C.F.R. §§ 102.33(c) and (d)).

The FDA's interpretation of its own regulations is reasonable and warrants deference. *Mensing*, 131 S. Ct. at 2575. But even if 21 C.F.R. § 101.22(i) were applicable here, it only sets forth a type-size requirement for the word "flavored." It does not specify a type-size for the words "Juice" or "Blend" or "100%" or "Cranberry" or "Pomegranate." It does not address placement of the words "Flavored Juice Blend" on a line below "Pomegranate," two lines below "Cranberry," and three lines below "100%." And this single regulation identified by Wal-Mart does not address any other aspect of its juice label. Thus, even if this requirement applied, and even if Wal-Mart were in compliance,[12]

[12] The label uses *three* different font sizes: one for "100% Cranberry Pomegranate"; a smaller one for "Flavored Juice Blend"; and an even smaller one for "From concentrate with added ingredients." If the word "flavored" is in fact no less than one-half the height of the words "100% Cranberry Pomegranate," *see* Wal-Mart Amended Mot. to Dismiss 10, then the label violates the type-size requirement for the words "from concentrate," which

Plaintiffs' state-law claims would not be barred in their entirety. *Accord* SG Br. 33, 2014 WL 827980, at *33 (concluding that FDA regulations do not "specify a type-size for the words 'Blend of 5 Juices'"; "does not address placement of 'Flavored Blend of 5 Juices' on a line below "Blueberry" and two lines below "Pomegranate"; and "does not address any other aspect of [Coca-Cola's] juice label").

* * *

Wal-Mart's Motion to Dismiss Pursuant to Rule 12(b)(6) seeks leave to dismiss with prejudice. Wal-Mart has

> led the district court into a procedural sidetrack that began with [its] decision to move for dismissal under Rule 12(b)(6) rather than filing an answer to plead preemption as an affirmative defense and moving for judgment on the pleadings under Rule 12(c). Preemption is an affirmative defense, *e.g., Fifth Third Bank v. CSX Corp.*, 415 F.3d 741, 745 (7th Cir. 2005), and pleadings need not anticipate or attempt to circumvent affirmative defenses. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L.Ed.2d 572 (1980) (concluding that there was no basis for imposing on plaintiff the burden to anticipate an affirmative defense); *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003) ("Affirmative defenses do not justify dismissal under 12(b)(6)"); Fed. R. Civ. P. 8(c) ("in responding to a pleading, a party must affirmatively state any avoidance or affirmative defense").

*Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010). Plaintiffs believe that the Court can and should deny Wal-Mart's Motion to Dismiss because there is no basis to conclude that Plaintiffs' state-law claims are pre-empted. But even if the Court were inclined to grant dismissal, it would be inappropriate to dismiss with prejudice. *See id.* at 562-63. Federal

---

must be no less than one-half the height of the letters in the name of the juice. *See* 21 C.F.R. §§ 102.33(d)(2) and (g)(1), 102.5(b)(2).

juice-labeling law "permits some state unfair-competition claims and bars others." SG Br. 25, 2014 WL 827980, at *25. Accordingly, if any deficiency in the allegations renders Plaintiffs' suit not actionable, then Plaintiffs should be given an opportunity to cure by filing an amended complaint. *See Bausch*, 630 F.3d at 562-63. That said, Plaintiffs are confident their allegations, as pleaded, survive pre-emption, and thus urge the Court to deny Wal-Mart's Motion.

## II.   PLAINTIFFS HAVE STATED ACTIONABLE CLAIMS UNDER FLORIDA LAW.

### A.   Wal-Mart Cannot Invoke the FDUPTA's Safe Harbor Provision Because Its Labeling Violates Federal Law and Is Otherwise Not Specifically Permitted by Federal Law.

Wal-Mart contends that the "safe harbor" provision of the Florida Deceptive and Unfair Trade Practices Act bars Plaintiff's suit. Wal-Mart Amended Mot. to Dismiss 15-17. This safe harbor, however, is inapplicable. It only bars "lawsuits challenging conduct which is *specifically permitted* by a federal or state regulatory scheme." *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1233 (S.D. Fla. 2007) (emphasis added). Wal-Mart's juice labeling is not.

As discussed above, Wal-Mart's juice name violates federal regulations governing the "common or usual name" for multiple-juice beverages. Moreover, no statutory or regulatory provision specifically requires or authorizes many of the features of the label challenged by Plaintiffs—including the vignette, and the juice name's placement, lettering, type-size, and spacing. And the FDA itself has concluded that a label that complies with the naming conventions may nonetheless be misbranded in violation of federal law if "information on a food label [is] insufficiently prominent or conspicuous, or misleading,

for 'reasons' 'other' than those specifically enumerated" by federal law.[13] SG Br. 30, 2014 WL 827980, at *30 (citing in part 21 C.F.R. § 101.15(a)).

For all these reasons, Wal-Mart simply cannot show that each and every feature of its label challenged by Plaintiffs as misleading, or the label as a whole, is "specifically permitted" by federal law. *See Prohias*, 490 F. Supp. 2d at 1233. It has no business, therefore, invoking the FDUPTA's safe harbor provision.

**B. Wal-Mart's Request to Dismiss Plaintiffs' Unjust Enrichment Claim Fails.**

Wal-Mart argues that Plaintiffs fail to state a claim for unjust enrichment because Walmart's wrongful conduct is permitted by federal law. Wal-Mart Amended Mot. to Dismiss 17. As already discussed, however, Wal-Mart's label violates federal law.

Wal-Mart also argues that Plaintiffs' unjust enrichment claim must be dismissed if its FDUTPA claim is also dismissed based on the statute's safe harbor provision. *Id.* at 17-18. This argument fails on its own terms because, as discussed, there is no basis to dismiss Plaintiffs' FDUPTA claim. *See supra* pp. 20-21.

In addition, Wal-Mart argues that the unjust enrichment claim must be dismissed because Plaintiffs have adequate remedies at law under the FDUTPA and based on warranty claims. Wal-Mart Amended Mot. to Dismiss 18. Dismissal, however, is not warranted. The general rule that equitable remedies are not available under Florida law when adequate legal remedies exist does not apply to unjust enrichment claims. *Williams*

[13] It also bears repeating that the FDA does not pre-approve juice labeling, and that the absence of an enforcement action cannot be taken as an indication that a particular label complies with federal law. *See supra* p. 9. Wal-Mart, therefore, has no basis to say definitively that its label is not misbranded in violation of 21 U.S.C. § 343(a)(1).

*v. Bear Stearns & Co.*, 725 So. 2d 397, 400 (Fla. 5th DCA 1998). What is more, "the Federal Rules do not prohibit the pleading of an equitable remedy alongside a claim for monetary remedy." *Adelphia Cable Partners, Inc. v. E & A Beepers Corp.*, 188 F.R.D. 662, 666 (S.D. Fla. 1999); *see* Fed. R. Civ. P. 8(a). Courts, accordingly, have allowed plaintiffs to assert claims for "money had and received" under Florida law—which is an equitable doctrine that is "treated the same (and requires the same showing)" as a claim for unjust enrichment—along with FDUTPA and warranty claims. *Garcia v. Kashi Co.*, No. 12-21678, 2014 WL 4392163, at *24 (S. D. Fla. Sept. 25, 2014).

Lastly, Wal-Mart argues that the unjust enrichment claim should be dismissed because Plaintiffs have alleged the existence of an express contract. Wal-Mart Amended Mot. to Dismiss 18. Wal-Mart cites a single case, *Degirmenci v. Sapphire-Fort Lauderdale, LLLP*, 693 F. Supp. 2d 1325, 1347-48 (S.D. Fla. 2010), in support of dismissal, but *Degirmenci* only confirms that dismissal is not warranted here. The court in *Degirmenci* recognized that "Florida appellate decisions have reinforced the position that quantum meruit damages cannot be awarded when an enforceable contract exists." *Id.* at 1348. It then dismissed plaintiff's unjust enrichment claim because there was "no dispute" regarding whether there was an express contract in that case. *Id.*; *see also Williams*, 725 So. 2d at 400 ("It is only upon *a showing* that an express contract exists [between the parties] that the unjust enrichment . . . count fails." (emphasis added)).

Here, however, Wal-Mart has not conceded the existence of an enforceable contract. *See* Wal-Mart Amended Mot. to Dismiss 18-19. Instead, it repeatedly says that

Plaintiffs "averred" that an enforceable contract exists. *Id.* Absent such a concession, dismissal is not appropriate.

**C. Plaintiffs Provided Adequate Pre-Suit Notice.**

Wal-Mart seeks dismissal of Plaintiffs' warranty claims for failure to allege in the Complaint that Plaintiffs provided pre-suit notice. Wal-Mart Amended Mot. to Dismiss 19. That is not accurate. Plaintiffs alleged in their Complaint that adequate pre-suit notice was given to Wal-Mart. Compl. ¶ 114 ("All conditions precedent to Defendant's liability under this contract, including notice, have been performed by Plaintiffs and the Class."); *see* Letter from Tim Howard to Wal-Mart, June 15, 2014, attached as Exhibit 4.

**D. Plaintiffs Have Standing to Assert Consumer Protection Claims Relating to Products They Purchased.**

Wal-Mart's insistence that Plaintiffs lack standing to pursue remedies for buying its deceptive product blinks reality. *See* Wal-Mart Amended Mot. to Dismiss 20-22. Plaintiffs' Complaint alleges that because of Wal-Mart's misleading labels, Plaintiffs spent money they otherwise would not have spent. *E.g.*, Compl. ¶¶ 48-49, 66-67, 73-74. This economic injury is, without question, sufficient to establish Article III standing. With respect to the products they purchased, Plaintiffs have adequately alleged a "concrete and particularized" injury, caused by Wal-Mart's conduct, which can be remedied by a damages award by this Court. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000); *Garcia*, 2014 WL 4392163, at *26-27 (named plaintiff in a consumer class action has standing to bring FDUTPA and warranty claims relating to products he purchased); *Toback v. GNC Holdings, Inc.*,. No. 13-80526-CIV, 2013 WL

5206103, at *5 (S.D. Fla. Sept. 13, 2013) (same result in case concerning consumer claims under FDUTPA).

Courts considering similar allegations have "overwhelmingly found" that "the injury of paying a higher price for a falsely advertised product is enough to show Plaintiffs suffered particularized harm to a legally protectable interest in the form of an economic loss." *Samet v. Procter & Gamble Co.*, No. 5:12-cv-01891 (PSG), 2013 WL 3124647, at *3 & n. 32 (N.D. Cal. June 18, 2013); *see Smith v. W.M. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336 (S.D. Fla. 2009) (allowing claim for price inflation damages for premium charged for chewing gum which advertised that it contains a natural ingredient scientifically proven to help kill the germs that cause bad breath). Wal-Mart, therefore, has no basis to say that Plaintiffs lack standing to bring these consumer protection claims. The Court, accordingly, should deny Wal-Mart's Motion to Dismiss, pursuant to Rule 12(b)(1), for lack of subject-matter jurisdiction

### E. Plaintiffs' Request for Punitive or Treble Damages Is Not a Claim Subject to Dismissal Under Rule 12(b)(6).

Wal-Mart seeks dismissal under Rule 12(b)(6) because the Complaint's prayer for relief requests punitive and treble damages, which it says are not recoverable here; it has not moved to strike pursuant to Rule 12(f). Wal-Mart Amended Mot. to Dismiss 23. Dismissal is not warranted because "a request for punitive damages is not a 'claim' within the meaning of [Federal Rule of Civil Procedure] 8(a)(2); it is only part of the relief prayed for in a claim." *Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1297 (11th Cir. 1999), *vacated in part on other grounds by* 204 F.3d 1069 (11th Cir. 2000). The same is true of Plaintiffs' request for treble damages; this is not a "claim" within the meaning of Rule 8.

"[S]ubjecting Plaintiff's prayer for relief to dismissal pursuant to a Rule 12(b)(6) motion is improper." *Schmidt v. C.R. Bard, Inc.*, No. 6:14-cv-62, 2014 WL 5149175, at *7 (S.D. Ga. Oct. 14, 2014). Although dismissal is not appropriate, should the Court treat this part of Wal-Mart's Motion to Dismiss as a motion to strike, *see, e.g.*, *Rathbone v. Haywood Cnty.*, No. 1:08-cv-117, 2008 WL 2789770, at *1 (W.D.N.C. July 17, 2008), then Plaintiffs would concede that punitive and treble damages are not recoverable forms of relief.

## CONCLUSION

For the reasons just discussed, this Court should deny Wal-Mart's Motion to Dismiss the Complaint. Plaintiffs have stated "simply, concisely, and directly" events that entitle them to damages from Wal-Mart. *See Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). Should the Court dismiss any portion of the pleading, however, Plaintiffs respectfully request leave to amend. *See id.*; Fed. R. Civ. P. 15(a)(2).

Date: November 25, 2014

Respectfully submitted,

Andre M. Mura
CENTER FOR CONSTITUTIONAL LITIGATION, P.C.
777 6th Street, N.W., Suite 520
Washington, DC 20001
Telephone: (202) 944-2860
Fax: (202) 965-0920
andre.mura@cclfirm.com

Tim Howard, J.D., Ph.D.
Florida Bar No.: 655325
HOWARD & ASSOCIATES, P.A.
2120 Killarney Way, Suite 125
Tallahassee, FL 32309
Telephone: (850) 298-4455
Fax (850) 216-2537
tim@howardjustice.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 25th day of November, 2014, I electronically

filed the foregoing document with the Clerk of the Court using CM/ECF which will send

notice of electronic filing to all attorneys of record.

/s/Andre M. Mura
Andre M. Mura

# EXHIBIT 1

Great Value
100%
Cranberry
Pomegranate
Flavored Juice Blend
100%

# EXHIBIT 2

# Inspections, Compliance, Enforcement, and Criminal Investigations

## Nestle USA, 12/4/09

Department of Health and Human Services

Public Health Service
Food and Drug Administration
College Park, MD 20740

**DEC 04 2009**

Brad Alford, Chairman and CEO
Nestle U.S.A.
800 North Brand Boulevard
Glendale, CA 91203

**WARNING LETTER**

**Re: CFSAN-OC-10-05**

Dear Mr. Alford:

The Food and Drug Administration (FDA) has reviewed the labeling for several Nestle Juicy Juice products: Juicy Juice Brain Development Fruit Juice Beverage (Apple), Juicy Juice All-Natural 100% Juice Orange Tangerine, and Juicy Juice All-Natural 100% Juice Grape. Based on our review, we have concluded that these products are misbranded within the meaning of section 403 of the Federal Food, Drug, and Cosmetic Act (the Act) [21 USC 343] because their labeling deviates from the requirements of the Act and FDA regulations at Title 21 of the Code of Federal Regulations.

Your Juicy Juice Brain Development Fruit Juice Beverage product is misbranded within the meaning of section 403(r) of the Act [21 USC 343(r)] because its labeling includes unauthorized nutrient content claims. Except for statements that describe the percentage of a vitamin or mineral in relation to a Reference Daily Intake (RDI), a nutrient content claim cannot be made for a food intended for use by infants and children less than 2 years of age unless the claim is specifically provided for in parts 101, 105, or 107 of FDA regulations. 21 CFR 101.13(b)(3). This product is marketed specifically for children under two years of age, as indicated by the claim "Helps support brain development***In children under two years old," which appears on the product label. The label also bears the nutrient content claim "no sugar added." The circumstances under which a "no sugar added" claim is permitted are defined in 21 CFR 101.60(c). That regulation does not allow the claim for conventional food products intended for use in children under age 2. 21 CFR 101.60(c)(4). Therefore, the claim "no sugar added" misbrands your product.

On October 30, 2009. we also reviewed your website, http://www.juicyjuice.com. the address of which is listed on the Juicy Juice Brain Development Fruit Juice Beverage label. The labeling found on your website makes an additional unauthorized nutrient content claim, which further misbrands the product. The website claims that Juicy Juice Brain Development Fruit Juice Beverage is "naturally lower in sugar." As noted above, except for statements that describe the percentage of a vitamin or mineral in relation to an RDI, no nutrient content claims can be made for a food intended specifically for use by infants and children less than 2 years of age unless specifically permitted by FDA regulations. 21 CFR 101.13(b)(3). The circumstances under which a "lower in sugar" claim is permitted are defined in 21 CFR 101.60(c)(5). That regulation does not allow the use of the claim for food products intended for use in children under age 2.

Emergency Preparedness International Programs News & Events Training and Continuing Education
Inspections/Compliance State & Local Officials Consumers Industry Health Professionals FDA Archive

 U.S. Department of **Health & Human Services**

**Links on this page:**

# EXHIBIT 3

Gift Cards
Registry
Lists
Weekly Ads
Store Finder
Track Order
Savings Catcher
Help
All
Search
Hello. Sign In
My Account
All Departments
My Local Store
Trending
Value of the Day
Holiday Hub
Free shipping on eligible orders of $50 or more*
Alcon EXPERIENCE THE COLOR STUDIO AND FIND YOUR PERFECT COLOR ©2014 Novartis 9/14 TRD14141WB-E Learn More
Check out these related products
Rollback
$6 40
Dynamic Health Cranberry...
$21 00
Dynamic Health Laboratori...
(2)
$5 41
Lipton Hot Spiced Cider A...
$23 70
Jumex Mango Nectar, 1.89L...
(1)
Rollback
$9 63
Dynamic Health Laboratori...
Food > Beverages > Juice
Great Value 100% Cranberry Pomegranate Flavored Juice Blend, 64 fl oz
0 reviews Q&A By: Great Value Walmart #: 009574567
$2 78 Alexandria
This item is only sold at a Walmart store.
Add it to your list so you can purchase it on your next visit.
Add to list
Add to registry
Great Value
100% Cranberry Pomegranate
Shipping
Not available
FREE pickup
In-store purchase only
Showing options for 20001
Location
Store availability
Alexandria - 8 mi.
6303 Richmond Hwy
In stock
Clinton - 12 mi.
8745 Branch Ave
In stock
Washington - 1 mi.
99 H Street Nw
Out of stock
More gifts. More savings.
Availability may change. You'll see exact pickup dates when you check out.
Learn more about FREE pickup
You searched:
20001
Find

From $25^{00}

Canon PIXMA MG2920 Wirele...

$297^{99}

Samsung UN40H5003AFXZA 40...

Rollback

$20^{00}

Hamilton Beach Power Delu...

$197^{99}

Samsung 32" Class LED 720...

$29^{00}

Crayola 3-in-1 Double Eas...

Wake up to holiday bliss

Coffee & Tea Gifts

About this item | Customer reviews | Item recommendations | Policies

Advertisement

AdChoices

# About this item

Great Value 100% Cranberry Pomegranate Flavored Juice Blend is a delicious way to get the great taste of cranberry and pomegranate and a day's worth of vitamin C. It's naturally gluten free, and with no artificial flavors or colors, you can feel good about serving it to your family. Our guarantee is our promise that you'll be fully satisfied with the taste and quality of every Great Value product. If for any reason you aren't happy, we'll replace it or return your money. Whichever your prefer. All you need is the package and the receipt. It's that simple. Great quality. Great price. Guaranteed.

**Great Value 100% Cranberry Pomegranate Flavored Juice Blend:**

- Contains 100% juice
- 100% daily value of vitamin C per serving
- No sugar added
- No artificial flavors or colors
- Pasteurized
- Naturally gluten free

**Warnings:**

Read more

## Explore related products

Pomegranate Juice

Pomegranate

Orange Juices

Cranberry Juice

## Explore this item

Specifications | Nutrition facts

## Nutrition Facts

Serving Size 240 ml
Servings Per Container 8

| Amount Per Serving | |
|---|---|
| **Calories** | 140 |
| Calories From Fat | 0 |
| | **% Daily Value** |
| **Total Fat** 0 G | 0 |
| Saturated Fat 0 G | 0 |
| Trans Fat 0 G | |
| **Cholesterol** 0 Mg | 0 |
| **Sodium** 35 Mg | 1 |
| **Potassium** 0 Mg | 0 |
| **Total Carboydrate** 35 G | 12 |
| Dietary Fiber 0 G | 0 |

(-) Information is currently not available for this nutrient.

* Percent Daily Values are based on a 2,000 calorie diet. Your daily values may be higher or lower depending on your calorie needs:**

** Percent Daily Values listed below are intended for adults and children over 4 years of age. Foods represented or purported to be for use by infants, children less than 4 years of age, pregnant women, or lactating women shall use the RDI's that are specified for the intended group provided by the FDA.

| | Calories: | 2,000 | 2,500 |
|---|---|---|---|
| Total Fat | Less than | 65g | 80g |
| Sat. Fat | Less than | 20g | 25g |
| Cholesterol | Less than | 300mg | 300mg |
| Sodium | Less than | 2400mg | 2400mg |
| Potassium | | 3500mg | 3500mg |
| Total Carbohydrate | | 300mg | 375mg |

| Sugars 35 G | |
|---|---|
| **Protein** 0 G | |
| Vitamin A | **0** |
| Vitamin C | **100** |
| Calcium | **0** |
| Folic Acid | **0** |

| Dietary Fiber | 25mg | 30mg |
|---|---|---|

Calories per gram:
Fat 9 • Carbohydrate 4 • Protein 4

Advertisement

# Customer reviews

Write a review

Be the first to review this item. Share your rating and review so that other customers can decide if this is the right item for them.

# Customer Q&A

Ask a question

Have questions? Get answers from experts and customers who own this product.

**Sort by:** Number of answers

Is this product gluten free?

0 answers
Last answer:

1

1-1 of 1 questions

Sponsored products

What's this?

Pomegranate Juice Concentrate 8 fl oz Liquid
$3.99
Piping Rock Health Pr...
Ad

Jarrow Formulas Cardiovascular Support - Pomegranate Juic...
$20.64
PureFormulas.com
Ad

Pomegranate Concentrate 16 fl oz Liquid by Dynamic Health
$10.50
Swanson Health Prod...
Ad

Vitacost 100% Pure Pomegranate Juice Concentrate 16 fl oz
$9.99
Vitacost.com
Ad

Pomegranate Juice Concentrate - Life Extension - Blood Flow - 00957
$22.50
DR Vitamin Solutions
Ad

Pomegranate 100%, 6 of 16 OZ, Pom Wonderful
$27.18
VitaDigest.com
Ad

Sponsored links

What's this?

Just **Juice** — Look No Further Than R.W. Knudsen Family® For Maximum **Juice** Taste!
www.rwknudsenfamily.com/Just-Juice

Vitacost® - Official Site — 40,000+ Health & Wellness Products. Free Shipping on Orders Over $49!
Vitacost.com/Exotic-Fruit

Discount Jarrow
Save On Jarrow Formulas Full Line +50% Off - Free Shipping Available!
www.LuckyVitamin.com/JarrowFormulas

**Pomegranate** Supplements
Quality Extracts Buy 1 Get 2 Free! 100% Freshness, Purity & Potency
www.Puritan.com

**Pomegranate Juice**: Cheap
Want Deals for **Pomegranate Juice**? Everyday Savings on What You Need.
www.HealthLane.com

Advertisement

Compute- atlas-apps-11031821-5-32624257, DC- prod-dal3, ENV- prod-a, Ver- 4.6.0, SHA- 4aab669cec41c9eb0b67ae74c1f75e29c8821989, Log-496cff72-10c-149e2370408000

Be the first to save! Enter email address Sign up Privacy policy

Stay connected     Mobile apps

**Walmart Credit Card**
Apply Now

**Financial Services**
Walmart Credit Card
Walmart MoneyCenter
Manage Account & Pay Bill

**Get to Know Us**
Corporate
Our Story
News & Views
Giving Back
Global Responsibility
Investors
Suppliers
Careers
@Walmartlabs

**Walmart.com**
About Walmart.com
Terms of Use
Affiliate Program
Sponsorship Submission
International Customers
About Our Ads
Store Finder
Printable Coupons
See All Departments
View Mobile Site

**Customer Service**
Help Center
Track Your Order
Returns Policy
Return an Item
Product Recalls
Associate Discount
Privacy & Security
California Privacy Rights
Contact Us
Feedback

**In the Spotlight**
[+] Baby
[+] Cell Phones
[+] Clothing
[+] Electronics
[+] Gifts
[+] Home
[+] Home Appliances
[+] Tires
[+] Toys
[+] Video Games
[+] Walmart Specials
[+] International Sites

© 2014 Walmart Stores, Inc.

To ensure we're able to help you as best we can, please include your reference number: L8BJC7X2TJ

# EXHIBIT 4

# Howard & Associates
# Attorneys at Law, P.A.

*Dr. Tim Howard, J.D., Ph.D., Senior Partner**
*Florida Supreme Court Certified Mediator*

Howard & Associates, P.A.
2120 Killarney Way, Suite 125
Tallahassee, Florida 32309
(850) 298-4455
(850) 216-2537
Tim@howardjustice.com

Cambridge Office
8 Museum Way Ste. 2407
Cambridge, MA 02141
(857) 277-0990
Tim@howardjustice.com

Cambridge Graduate University
One Broadway, 14th Floor
Cambridge, MA 02142
(617) 475-0201
(877) 645-6225 (6-GLOBAL)
president@cguglobal.net

June 15, 2014

Walmart Corporate Office Headquarters
Chief Executive Officer: C. Douglas Mcmillon
702 SW 8th Street
Bentonville, Arkansas 72716-8611

Re: Class Action Complaint for Walmart Brand Great Value 100% Cranberry Pomegranate Juice

Dear Walmart,

This correspondence shall serve as Notice of our intent to file a class action lawsuit against Wal-Mart Stores, Inc. d/b/a Walmart for false, deceptive trade practices, false advertising, and breach of both express and implied warranties in connection with the sale of **Walmart Brand Great Value 100% Cranberry Pomegranate Juice.**

Specifically, you advertise and market your juice as having cranberry and pomegranate juice to take advantage of consumers looking for juices with high anti-oxidant qualities. In reality, your juice has little to no pomegranate juice, and consists predominantly of apple juice.

Please contact us at our Tallahassee, Florida office if you intend to permanently remove these products from your shelves immediately to prevent any further consumer deception or harm. We are also open to discussing your relabeling of this product to conform with current FDA and FDCA requirements.

Sincerely yours,

Tim Howard, J.D., Ph.D.
Florida Bar No.: 655325
**Howard & Associates, P.A.**
2120 Killarney Way, Suite 125
Tallahassee, Fl 32309
(850) 298-4455
tim@howardjustice.com

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Professor and Director of Northeastern University's Law & Policy Doctorate Program. President and Professor Cambridge Graduate University.