**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**IRA REYNOLDS and PATRICIA
BELL individually and on behalf of all
others similarly situated,**

        **Plaintiffs,**

**v.**                                   **Case No. 4:14cv381-MW/CAS**

**WAL-MART STORES, INC.,**

        **Defendant.**

_____/

## ORDER ON MOTION TO DISMISS COMPLAINT

This is a proposed class action asserting that a juice label is misleading. Plaintiffs Ira Reynolds and Patricia Bell bring state-law claims individually and on behalf of others against Defendant Wal-Mart Stores, Inc.  The proposed class is persons who purchased Wal-Mart's Great Value cranberry and pomegranate flavored juice.  Wal-Mart moved to dismiss the complaint, arguing primarily that these state-law claims are preempted by federal law.  This Court considered the papers and heard argument.[1]  In most respects, this order denies the motion to dismiss the complaint.

_____

[1] The hearing took place on January 15, 2015.  The transcript is at ECF No. 35.

## I. Background

Wal-Mart produces Great Value juices in various flavors. The flavor at issue here is cranberry and pomegranate. The complaint alleges that despite the flavor only a small amount of the product is cranberry or pomegranate juice. The juice is a blend of juices. The product is 100% juice, just not 100% cranberry and pomegranate juice.

Plaintiffs say that Wal-Mart is able to sell this product for a higher price than its apple-flavored juice because consumers associate various health benefits with pomegranate juice. Had they known the product was mostly apple and grape juice, Plaintiffs say they would have bought the cheaper alternative.

The front of the bottle has a "principal display panel." *See* 21 C.F.R. § 101.1. The back has an "information panel." *Id*. § 101.2. The information panel says that the product is 100% juice and that its ingredients include water and white grape, apple, plum, cranberry, and pomegranate juice concentrates, along with some other ingredients. Plaintiffs do not assert that anything on the information panel is untrue.

But Plaintiffs say that the principal display panel is misleading—that it suggests that the product is entirely cranberry and pomegranate juice. This is the principal display panel:



ECF No. 18 at 35.[2]   The primary assertion is that "100%" close to "Cranberry

Pomegranate," suggests the product is entirely  cranberry and pomegranate juice

when it is not.

The claims are brought under state law.  Count I alleges a violation of the

Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), §§ 501.201-

501.213, Florida Statutes.  Count II alleges breach of express warranty, § 672.313,

Florida Statutes.  Count III alleges breach of implied warranty, § 627.314, Florida

Statutes.  Count IV is brought under a theory of unjust enrichment.  ECF No. 1.

## II. Standing

The first issue is Plaintiffs' standing to bring these claims.  Wal-Mart says

that Plaintiffs fail to allege a concrete and particularized injury in fact.  A standing

---

[2] This image has been converted from the PDF filing and cropped to fit this space.  The image should not be used to measure sizes with precision.  The ruling on the motion does not turn on the precise differences between the relative sizes of the written statements on the label.

issue must be considered at the outset, because it is a "threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Dillard v. Baldwin Cnty. Comm'rs*, 225 F.3d 1271, 1275 (11th Cir. 2000), *abrogated on other grounds by Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007).

A plaintiff can meet the injury-in-fact requirement with a showing that "by relying on a misrepresentation on a product label, they paid more for a product than they otherwise would have paid, or bought it when they otherwise would not have done so." *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015); *see also POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2234 (U.S. 2014) ("A consumer who is hoodwinked into purchasing a disappointing product may well have an injury-in-fact cognizable under Article III.").

Plaintiffs allege that they have paid more money based on the misleading label of the juice. This is enough to establish Article III standing.

In reaching that conclusion, this Court has not overlooked the cases cited by Wal-Mart. Nothing about any of these cases suggests it is not an Article III economic injury to pay an inflated price for a product because of the seller's misrepresentation. *See Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009) (noting plaintiffs alleged no representations that iPod users could safely listen to loud music for a long time and admitted that the defendant warned otherwise);

*Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315 (5th Cir. 2002) (where drug was recalled because some used it unsafely contrary to warnings, plaintiffs that used drug but did not allege physical or emotional injury, or that the drug was ineffective failed to establish injury-in-fact); *Medley v. Johnson & Johnson Consumer Companies, Inc.*, No. 10-CV-02291 DMC JAD, 2011 WL 159674, at *2 (D.N.J. Jan. 18, 2011) (plaintiffs that used baby shampoo containing methyl chloride without adverse health effects failed to establish injury).

Unlike the cases cited by Wal-Mart, this complaint alleges an economic injury-in-fact sufficient to confer Article III standing. *See, e.g.*, *Reid*, 780 F.3d at 958; *Zupnik v. Tropicana Products, Inc.*, No. CV 09-6130 DSF RZX, 2010 WL 6090604, at *1 (C.D. Cal. Feb. 1, 2010).

**III. Standard on motion to dismiss**

Federal Rule of Civil Procedure 8(a) requires pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief." When deciding a motion to dismiss, courts must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." *McCone v. Pitney Bowes, Inc.*, 582 F. App'x 798, 799 (11th Cir. 2014) (quoting *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1187 (11th Cir. 2004)). To survive dismissal, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007).  It must also contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A claim is facially plausible when the court can draw the reasonable inference that the defendant is liable for the misconduct alleged."  *McCone*, 582 F. App'x at 799-800 (emphasis added) (quoting *Iqbal*, 556 U.S. at 662) (internal quotation marks omitted).

## IV. Preemption

The complaint asserts that this juice label indicates that the product is entirely cranberry juice and pomegranate juice when it is not.  Plaintiffs say this violates state laws that mirror federal laws and seek to recover damages.  Wal-Mart asserts that those claims are preempted by federal law.

The existence of an affirmative defense such as preemption will not usually support a motion to dismiss.  *See Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984),  *aff'd*, 764 F.2d 1400 (11th Cir. 1985) (en banc).  But there is an exception allowing dismissal under Rule 12(b)(6) when the affirmative defense "clearly appears on the face of the complaint."  *Id*. at 1069.  If the "complaint itself demonstrates" that the claims are preempted then dismissal is proper. *Id*.

Wal-Mart has not shown that the claims are preempted.  In sum, the complaint alleges that this juice is "misbranded" under 21 U.S.C. § 343, and the

Nutrition Labeling and Eduction Act, 21 U.S.C. § 343-1, does not preempt parallel state claims premised on these alleged violations of federal law.

### A. *The Food, Drug, and Cosmetic Act*

The journey begins with an understanding of what federal law requires of juice labels. The Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301-399f, prohibits the "misbranding" of food in interstate commerce. *See* 21 U.S.C. § 331.[3] One provision of the FDCA, 21 U.S.C. § 343, lists twenty three reasons why a food "shall be deemed misbranded." Only three are relevant here, § 343(a), (f), and (i).

Among other things, a food is misbranded if a label does not bear "the common or usual name of the food, if any there be," *id*. § 343(i), or if information required to appear on its label "is not prominently placed thereon with such conspicuousness (as compared with other words, statements, designs, or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use." *Id.* § 343(f). The third provision is a catch-all, deeming a product misbranded if "its labeling is false or misleading in any particular." *Id.* § 343(a)(1).[4]

---

[3] The term "food" means "articles used for food or drink for man or other animals." 21 U.S.C. § 321(f).

[4] In determining whether a product is misbranded because the labeling is misleading, the relevant consideration is "not only representations made or suggested by statement, word,

The misbranding categories are interrelated. Aspects of the labels that are required or permitted by a more specific provision "by definition, are not considered 'false or misleading' under federal law." *See, e.g.*, *Red v. The Kroger Co.*, No. CV 10-01025 DMG MANX, 2010 WL 4262037, at *5 (C.D. Cal. Sept. 2, 2010). But if some aspects of a label are required or permitted, and so by definition not false or misleading, the rest of the label must still comply with § 343(a)(1) and not be "false or misleading in any particular." *See United States v. An Article of Food Labeled Nuclomin*, 482 F.2d 581, 583 (8th Cir. 1973) ("*Food Labeled Nuclomin*") ("[E]ven though the . . . label is technically accurate and further meets the regulations' disclosure requirements, it must also comply with [§ 343(a)] and not be misleading.").[5] "Congress presumably chose to include § 343(a) in the statutory scheme in order to allow the FDA to target specific false or misleading labels without having promulgated regulations that address the specific false or misleading aspect of the particular label." *Zupnik v. Tropicana*

---

design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material in the light of such representations. . . ." 21 U.S.C. § 321(n).

[5] The government explained this in a recent case, asserting that "compliance with one aspect of [FDA's] juice-naming regulations does not, by itself, render a juice label non-misleading . . . [b]ut compliance with FDA's juice-naming regulations does make the juice's *name* nonmisleading." Brief for United States as Amicus Curiae Supporting Neither Party, *POM Wonderful LLC v. The Coca-Cola Company*, 2014 WL 827980, at *19 (U.S. 2014). Perhaps it is more precise to say that compliance with FDA's juice-naming regulations as to an aspect of the product's name makes that compliant aspect of the name nonmisleading.

*Products, Inc.*, No. CV 09-6130 DSF RZX, 2010 WL 6090604, at *2 (C.D. Cal.

Feb. 1, 2010).  The Food and Drug Administration ("FDA") is authorized to

promulgate regulations to enforce those provisions.  21 U.S.C. § 371(a).

With that framework in mind, this Court turns to the specific allegations.

### B. *The alleged violations of the FDCA*

Plaintiffs assert the Great Value juice violates the FDCA and its regulations

in several ways.  They argue the label does not display the "common or usual name

of the food" and it is misbranded under § 343(i).  Plaintiffs also say the label

violates § 343(a)(1) in the holistic sense; that it is "false or misleading" because it

indicates the beverage is entirely cranberry and pomegranate juice when it is not.

### 1. The "common or usual name"

First, there is Plaintiffs' argument that the product is misbranded under

§ 343(i).  The complaint asserts that the Great Value juice includes very little

cranberry or pomegranate juice.  If that is true, the regulations implementing

§ 343(i) obliged Wal-Mart to indicate on the label that cranberry and pomegranate

are flavors rather than predominant juices.  A jury could conclude this label fails to

meet that requirement.

To implement the FDCA, the FDA has promulgated regulations in Title 21

of the Code of Federal Regulations.  Part 102 of that title establishes general

principles  for the "common or usual name of the food" and makes requirements

for specific nonstandardized foods. The name may be established by common usage or regulation. 21 C.F.R. § 102.5(d). It must "*accurately* identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." *Id*. § 102.5(a) (emphasis added). It "may not be confusingly similar to the name of any other food that is not reasonably encompassed within the same name." *Id*. And if the proportion of a characterizing ingredient "has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient[] . . . is present in an amount greater than is actually the case," the regulation presumes that the percentage of that ingredient will be declared unless a more specific rule says otherwise. *Id*. § 102.5(b).

Relevant here, the more specific regulation is 21 C.F.R. § 102.33(d), a requirement about the "common or usual name" of beverages containing fruit or vegetable juice. *See* 21 U.S.C. 343(i)(1). If a named juice in a blend of juices is not the predominant juice, then the "common or usual name" of the product must use one of two methods to "inform the consumer that the juice is present in an amount sufficient to flavor the beverage but [to] not imply that the content of that juice is greater than is actually the case." Food Labeling; Declaration of Ingredients; Common or Usual Name For Nonstandardized Foods; Diluted Juice Beverages, 58 Fed. Reg. 2897-01, 2921 (Jan. 6. 1993).

One way to comply is to be specific and "[i]nclude the amount of the named juice, declared in a 5–percent range." 21 C.F.R. § 102.33(d)(2). The example given in the regulation is to say "10– to 15–percent cranberry juice and 3– to 8– percent raspberry juice." *Id*. Wal-Mart does not suggest it used this method.

The alternative method allows a more general statement—the common or usual name must "[i]ndicate that the named juice is present as a flavor or flavoring." 21 C.F.R. § 102.33(d)(1). The example given for that method is " 'Raspcranberry'; raspberry and cranberry flavored juice drink." *Id*. If all of the juices present are not named on the label, it must include a word such as "blend." *Id*. § 102.33(c). Wal-Mart argues that this label satisfies § 102.33 (c) and (d)(1) because it says "Flavored Juice Blend." Plaintiffs say the label does not comply with § 102.33(d)(1) because of the statement "100% Cranberry Pomengranate."[6]

In terms of compliance with these juice-labeling regulations, this label is a mixed message. Although the principal display panel includes the words "Flavored Juice Blend," and "from Concentrate with Added Ingredients," the statement "100% Cranberry Pomegranate" contradicts those statements and tells the consumer that the flavored juice blend consists of only cranberry and

---

[6] Several other regulations are relevant to this label. The flavor—in this instance cranberry and pomegranate—must be "followed by the word 'flavored' in letters not less than one-half the height of the letters in the name of the characterizing flavor." 21 C.F.R. § 101.22(i)(1)(i). So long as those requirements are met, the label may include a "vignette," an image depicting a fruit that provides the product's flavor. *Id*. § 101.22(i). Wal-Mart says the label complies with these rules, and Plaintiffs do not argue otherwise.

pomegranate juices.   The result is some basis to conclude the label "misrepresent[s] the contribution of one or more individual juices to the nature of the product." 58 Fed. Reg. at 2900.

The label should not imply to a consumer at the time of purchase "that the content of that juice is greater than is actually the case."  *Id*. at 2921.  The statement "100% Cranberry Pomegranate" arguably does just that.  It arguably undermines or even cancels out whatever other statements indicate cranberry and pomegranate are merely flavorings.

In a recent case dealing with similar facts, *Bell v. Campbell Soup Co.*, No. 4:14CV291-RH/CAS, 2014 WL 6997611 (N.D. Fla. Dec. 11, 2014), the court analyzed the statements on the label and found each was accurate and authorized by the applicable regulation.  The parties here both argued that *Bell* supported their respective positions.

This case is significantly different then *Bell*.  The use of "100%" in the same type size as "Cranberry Pomegranate" implies that the product is entirely cranberry and pomegranate juice, which is apparently inaccurate.  Nor is it authorized by the regulations.[7]

_____

[7] Another requirement is that the information panel must say how much of the beverage is juice; this is called the "percentage juice declaration."  Under § 343(i)(2), the information panel of a "beverage containing vegetable or fruit juice" must show "the total percentage of such fruit or vegetable juice," but exceptions may be provided by rule.  Under 21 C.F.R. § 101.30(b)(1), the information panel must include " 'Contains _____ percent (or %) _____ juice,' or '_____ percent (or %) juice,' or a similar phrase."  And under § 101.30(f), "The

It is no answer to say that the principal display panel is accurate because the product is entirely a juice blend that is cranberry and pomegranate flavored from concentrate with added ingredients. *See* ECF No. 35 at 32. Perhaps that is one way to interpret the label. But compliance is not assured with only a possible construction of the name that indicates what it must. Whether this label indicates these juices are present as flavoring "is peculiarly the province of the jury to decide by relating common experience in the conduct and reaction of people to the circumstances at hand and by weighing such evidence as may be offered of the actual reactions of numbers of ordinary people in similar circumstances." *See United States v. 88 Cases, More or Less, Containing Bireley's Orange Beverage*, 187 F.2d 967, 971 (3d Cir. 1951).

Wal-Mart says the "common or usual name" of the product is "100% Cranberry Pomegranate Flavored Juice Blend from Concentrate with Added Ingredients." ECF No. 12 at 8. Reading the different-sized statements together as one name is of little help, though. It still suggests that the juice blend is some proportion of just cranberry and pomegranate juice.

---

percentage juice declaration may also be placed on the principal display panel, provided that the declaration is consistent with that presented on the information panel."

The "100%" on this label is not authorized to be there as the percentage juice declaration allowed under § 101.30(f). The statement "100%" on this label is too far removed from explaining how much of the product is juice. Obviously, "100%" is not consistent with the 5-percent increment naming convention in § 102.33(d)(2).

A jury could conclude that the "common or usual name" of this product does not "*accurately* describe" the characterizing ingredients or adequately "[i]ndicate that the named juice is present as a flavor or flavoring." *See* 21 C.F.R. §§ 102.5(a) (emphasis added), 102.33(d)(1). The facts alleged are sufficient to state a claim that the product fails to bear the "common or usual name of the food" and is misbranded under 21 U.S.C. § 343(i).

      2. <u>False or misleading in any particular</u>

This Court has also considered Plaintiffs' assertion that the complaint states a violation of 21 U.S.C. § 343(a)(1), under which a food is misbranded if its label is "false or misleading in any particular." This Court concludes that it does.

A useful illustration is found in *United States v. Article of Food Consisting of 432 Cartons, More or Less, Containing 6 Individually Wrapped Candy Lollipops of Various Flavors*, 292 F. Supp. 839 (S.D.N.Y. 1968) ("*Candy Lollipops*"). The case concerned cartons of candy, each containing six lollipops. *Id*. at 840. The outside of the box said "Candy" but the inside said "Liquor Flavored Lollypops," and each was individually labeled scotch, bourbon, or gin. *Id*. The government asserted these products were misbranded under § 343(a) because the inside label "implies and represents that the article is flavored with liquor, which it is not." *Id*. The court agreed, recognizing that "a true statement

will not necessarily cure or neutralize a false one contained in the label." *Id*. at 841.

The Great Value label may be false or misleading for the same reasons: a truthful statement on a label clashing with an inaccurate statement to the contrary. The accurate, compliant statement "Flavored Juice Blend" does not necessarily cure or neutralize the allegedly inaccurate, unauthorized statement "100% Cranberry Pomegranate." *See also United States v. An Article of Food . . . "Manischewitz . . . Diet Thins",* 377 F. Supp. 746, 749 (E.D.N.Y. 1974) ("[W]hether or not the side panel of the Diet-Thins label may accurately describe its virtues for certain special diets which do not appear to involve weight control, the misleading nature of the front panel still justifies condemnation of the seized articles.").

The statement "100% Cranberry Pomegranate" is more prominent. The next two qualifying statements are smaller. When different size type is used, as Wal-Mart has chosen to do, the presentation is relevant when reading and understanding what the name of product is, and whether the label is misleading. *See* 21 U.S.C. § 321(n).

A consumer thinking about buying this product might observe natural breaks made by progressively smaller fonts. This effectively punctuates the name like this: "100% Cranberry Pomegranate: Flavored Juice Blend: from concentrate with

added ingredients." The modifying effect of "100%," such as it is, diminishes with the break.[8]

The FDA determined that two similar products were misbranded under § 343(a)(1). *See* Warning Letter of Roberta Wagner, FDA, to Brad Alford, Nestle U.S.A. ("Nestle Letter") (Dec. 4, 2009), ECF No. 19 at 3-6. Its analysis is instructive.

The principal display panel for each Nestle product identified them as "Orange Tangerine" or "Grape" in large bold lettering, and in close proximity to the statement "All Natural-100% Juice." The FDA said those statements were "designed to imply" the product was entirely those juices and "also may lead consumers to believe that the products are 100% orange/tangerine juice or 100% grape juice when, in fact, they are not." A separate, smaller statement on those labels said "Flavored juice blend from concentrate with other natural flavors & added ingredients." *Id*. The FDA said the "manner in which the latter statement is presented makes it less conspicuous and prominent than the other label statements and vignettes and therefore less likely to be read or understood by consumers at the time of purchase." *Id*.

---

[8] This is not unlike the latest chapter in a popular movie franchise. Images advertising the movie had "Star Trek" above the words "Into Darkness." Although the studio insisted there was no colon, some fans wondered whether the title was "Star Trek: Into Darkness," or "Star Trek Into Darkness." The FDA regulations at issue here are clearly aimed towards dispelling similar confusion by simply requiring a statement that the named juice is present as a flavoring.

The FDA found that the Nestle products were misbranded under § 343(a)(1). *Id*. But it made no mention of § 102.33(d)(1) or other provisions governing the size and placement of information on the label. One interpretation is that the FDA found that the Nestle juices satisfied § 102.33 by stating "Flavored juice blend" but yet the product was misbranded because it was "false or misleading" in some particular. Apparently the misleading particulars of those labels were the proximity of authorized statements to each other and their relative sizes. Presumably because those matters were not specifically required or permitted by regulation but tended to mislead, the FDA determined the products were misbranded under § 343(a)(1).

On that interpretation of the Nestle Letter, even if the Great Value juice bears the common or usual name of the food, and so is not misbranded under §343(i), the label is likely "false or misleading" in some particular and misbranded under § 343(a)(1).[9]

In the alternative, this Court holds that the complaint alleges that the product is misbranded under § 343(a)(1). Even assuming the lip service paid with the statement "Flavored Juice Blend" satisfies § 102.33(c) and (d), and so it is not misbranded under § 343(i), that true statement does not necessarily cure or

---

[9]  To be sure, a label might violate different provisions of § 343. Indeed, a study ordered by Congress found in a review of the enforcement actions taken by the FDA "invariably encountered charges under multiple sections of the FDCA." Institute of Medicine, *Food Labeling: Toward National Uniformity* 77 (1992).

neutralize the allegedly false or misleading statement "100% Cranberry Pomegranate." The complaint sufficiently alleges a violation of § 343(a)(1). *See Candy Lollypops*, 292 F. Supp. at 840; *see also United States v. Shabbir*, 64 F. Supp. 2d 479, 482 (D. Md. 1999); Nestle Letter at 2.

This Court now turns to the remaining question: whether some or all of claims premised on those alleged violations of federal juice-labeling law are preempted.

### C. Express preemption and the Nutrition Labeling and Education Act

Under the Constitution's Supremacy Clause, state laws that "interfere with, or are contrary to," federal law "must yield." *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 211 (1824). Congress has the authority to expressly preempt state law by statute. *E.g.*, *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). Wal-Mart says that Plaintiffs' state-law claims are expressly preempted by federal statute.

When there is an express preemption clause, a court must consider "the substance and scope of Congress' displacement of state law." *See Altria Group, Inc.*, 555 U.S. 70, 76 (2008). On these alleged facts, this Court concludes that Plaintiffs claims are not expressly preempted.

The starting point is a presumption against preemption. "[T]he purpose of Congress is the ultimate touchstone in every pre-emption case." *Medtronic, Inc. v.*

*Lohr*, 518 U.S. 470, 485 (1996) (quotation omitted).  "In all pre-emption cases, and particularly in those in which Congress has 'legislated . . . in a field which the States have traditionally occupied,' " a court must "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."  *Id.* (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).  "Laws regulating the proper marketing of food, including the prevention of deceptive sales practices, are likewise within states' historic police powers."  *In re Farm Raised Salmon Cases*, 175 P.3d at 1176 (citing *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 146 (1963)); *see also Plumley v. Com. of Mass.*, 155 U.S. 461, 472 (1894) ("If there be any subject over which it would seem the states ought to have plenary control, and the power to legislate in respect to which, it ought not to be supposed, was intended to be surrendered to the general government, it is the protection of the people against fraud and deception in the sale of food products.").

"The effect of that presumption is to support, where plausible, a narrow interpretation of an express pre-emption provision."  *CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2189, *reh'g denied*, 135 S. Ct. 23 (U.S. 2014) (internal quotation marks omitted).  That is, "when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily accept the reading that disfavors pre-emption."  *Id.*  (internal quotation mark omitted); *see also Irving v. Mazda*

*Motor Corp.*, 136 F.3d 764, 767 (11th Cir. 1998) ("[E]xpress preemption clauses must be construed narrowly.").

The Nutrition Labeling and Education Act ("NLEA"), 21 U.S.C. § 343-1, amended the FDCA to "forbid[] state-law requirements that are of the type but not identical to only certain FDCA provisions." *POM Wonderful LLC*, 134 S. Ct. at 2237. It says that "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement for the labeling of food of the type required by" §§ 343(i) or (f) "that is not identical to the requirements of such section." *See* 21 U.S.C. § 343-1(a)(2) and (3). According to the FDA, "Not identical to" means the requirements "concerning the . . . labeling of food . . . '(i) Are not imposed by or contained in the applicable provision [or regulation]; or (ii) Differ from those specifically imposed by or contained in the applicable provision [or regulation].' " 21 C.F.R. § 100.1(c)(4).

This Court must determine whether Plaintiffs' claims premised on alleged violations of the FDCA are expressly preempted under the NLEA.[10]

---

[10] There may be some question whether Plaintiffs' express warranty claim, Count II, imposes a requirement under the NLEA. The reasons are similar to those in Bates v. Dow Agrosciences LLC, 544 U.S. 431- 444-45 (2005). Because Plaintiffs have made no such argument, this Court will not address the issue.

1. <u>The NLEA does not preempt a state-law claim paralleling and premised upon a violation of § 343(i)</u>

Plaintiffs' claims premised on a violation of § 343(i) are not preempted by the NLEA. This is so because the NLEA only preempts nonidentical requirements. An identical requirement may be imposed through a parallel state claim.

Wal-Mart urges an overly broad view of the NLEA's preemption clause. It argued at the hearing (and after) that even if the label was found to violate federal juice-labeling regulations, Plaintiffs could not bring a state-law claim imposing a requirement identical to federal law. *See* ECF No. 35 at 11-12, 14, 28-29; *see also* ECF No. 36 at 3. The suggestion—apparently based on the text "of the type required by"—is that the state may not impose *any* requirements touching on the common or usual name (§ 343(i)) or the prominence of information (§ 343(f)) on the label. Wal-Mart essentially asks this Court to ignore the words "that is not identical" and turn a limited express preemption provision into a blanket prohibition on any state-law requirements, identical or not. This attempt at field preemption by another name will not succeed.

By its plain language the NLEA does not preempt state requirements that are *identical* to federal requirements in the applicable sections of the FDCA and its implementing regulations. *See, e.g.*, *Koenig v. Boulder Brands, Inc*, 995 F. Supp. 2d 274, 283 (S.D.N.Y. 2014); *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 93 (D.N.J. 2011); *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL

2925955, at *13 (E.D.N.Y. July 21, 2010); *In re Farm Raised Salmon Cases*, 175 P.3d at 1176.  Moreover, Congress said the NLEA "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted." Pub. L. 101–535, 104 Stat 235, § 6(a).  "The state thus can impose the identical requirement or requirements, and by doing so be enabled, because of the narrow scope of the preemption provision in the Nutrition Labeling and Education Act, to enforce a violation of the Act as a violation of state law."  *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011) (Posner, J.).

Without speaking in terms of implied preemption, Wal-Mart also challenges Plaintiffs' ability to enforce the FDCA indirectly through parallel state-law claims. Wal-Mart stresses that a violation of the FDCA is not enforceable by a private party and suggests that Plaintiffs have no standing to enforce it.  ECF No. 36 at 2.

It is true that "all such proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States."  21 U.S.C. § 337(a).[11]  Imposing identical requirements, though, "does not substantively transform plaintiffs' action into one seeking to enforce federal law . . . . it merely reflects Congress's considered judgment that states should uniformly regulate food labeling using identical standards." *Farm Raised Salmon Cases*, 175

---

[11] There is an exception allowing for a state to directly enforce some provisions, but it is not relevant here.  *Id.*  § 337(b).

P.3d at 1181.  Apart from direct enforcement, a state may indirectly enforce the federal law through a parallel state claim.

The Supreme Court said as much several times.  For example, in *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008), the Court considered an amendment to the FDCA concerning medical devices.  The amendment prohibited states from imposing any requirement "which is different from, or in addition to" FDA specifications.  *Id*. at 315 (quoting 21 U.S.C. § 360k(a)(1)).  The Court held that preemption clause "does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case 'parallel,' rather than add to, federal requirements."  *Id*. at 330 (quoting *Lohr*, 518 U.S. at 495 (1996)); *see also Wolicki-Gables v. Arrow Int'l, Inc.*, 634 F.3d 1296, 1301 (11th Cir. 2011) (applying *Riegel*).  The "presence of a damages remedy . . . merely provides another reason for manufacturers to comply with identical existing 'requirements' under federal law."  *Lohr*, 518 U.S. at 495.

Likewise, in *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005), the Court considered a similar statute and held that "a state-law labeling requirement is not pre-empted . . . if it is equivalent to, and fully consistent with . . . misbranding provisions."  *Id*. at 447.[12]  The "[p]rivate remedies that enforce federal misbranding

---

[12]  The preemption clause at issue in *Bates* said a state "shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from" federal requirements.  544 U.S. at 443 (quoting 7 U.S.C. §136v(b)).  At least one court has drawn a

requirements would seem to aid, rather than hinder, the functioning of" the statute.

*Id.* at 451. "[A] state cause of action that seeks to enforce a federal requirement 'does not impose a requirement that is different from, or in addition to,' requirements under federal law . . . [the statute] does not preclude States from imposing different or additional *remedies*, but only different or additional *requirements*." *Id*. at 447 (quoting *Lohr*, 518 U.S. at 513 (O'Connor, J., concurring in part and dissenting in part)).[13]

Plaintiffs' theory of liability is that Wal-Mart's juice is misbranded under either § 343(i) and (a)(1) because it suggests that the product is entirely cranberry and pomegranate juice when it is not. The Florida Food Safety Act ("FFSA") is in lockstep; it adopts § 343 (i) and (a)(1) in state law. *See* §§ 500.11(a)(1), (i), 500.02(2) (explaining the purpose of the FFSA is to "[p]rovide legislation which shall be uniform, as provided in this chapter, and administered so far as practicable

distinction between *Bates*'s explanation that a state requirement be "equivalent to, and fully consistent with" the federal rule and the NLEA requirement of identity. *See Red*, 2010 WL 4262037, at *7. The FDA's view is that "if the State requirement does the same thing that the Federal law does, even if the words are not the same, then it is effectively the same requirement as the Federal requirement. FDA's view . . . is that such a State or local requirement need not be preempted." State Petitions Requesting Exemption from Federal Preemption, 58 Fed. Reg. 2462-01, 2462 (1993); *see also* 21 C.F.R. § 100.1(c)(4) (defining "not identical to" in terms of additional or differing requirements). Any distinction makes no difference here, though, because the requirement is identical.

[13] It is true that not every violation of the FDCA will support a state-law claim. *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001) (holding fraudulent representations to the FDA could not sustain state-law claims); *cf. Papas v. Upjohn Co.*, 985 F.2d 516, 518-19 (11th Cir. 1993) (holding claim based on failure to disclose information to the EPA preempted). But the claims here are nothing like those in *Buckman* or *Papas*.

in conformity with the provisions of, and regulations issued under the authority of, the Federal Food, Drug, and Cosmetic Act"); *see also* Fla. Admin. Code. r. 5K-4.002(1)(d) (adopting FDCA regulations). A violation of the FFSA is actionable by a private party under causes of action such as FDUTPA. *See, e.g.*, *Bohlke v. Shearer's Foods, LLC*, No. 9:14-CV-80727, 2015 WL 249418, at *6 (S.D. Fla. Jan. 20, 2015).

Plaintiffs argue that part of their claims are based on a violation of § 343(i), an identical requirement. The NLEA does not preempt a state-law claim imposing an identical requirement. Plaintiffs may assert a parallel state-law claim.

2. The NLEA does not preempt Plaintiffs' claims based on an alleged violation of § 343(a)(1)

A related question is whether the NLEA bars Plaintiffs from bringing a parallel claim based on an alleged violation of § 343(a)(1). For the following reasons, this Court concludes it does not.

The words of the preemption clause are important. Recall that the NLEA says that "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement for the labeling of food of the type required by" § 343(i) or (f) "that is not identical to the requirements of such section." *See* 21 U.S.C. § 343-1(a)(2) and (3).

The States' ability to impose a food-labeling requirement is limited by

§ 343-1(a).  This action relates to "the labeling of food."  If the Plaintiffs seek to impose a requirement "of the type required by" either § 343(i) or (f), then they are limited to enforcing requirements identical to those of "such section[s]," and "such section[s]" do not include § 343(a)(1).  This Court must determine, then, whether the legal duty imposed by § 343(a)(1) is a requirement "of the type required by" § 343(i) or (f).[14]

The most analogous framework for deciding whether the § 343(a)(1) requirement is "of the type required by" the specific misbranding provisions is found in *Altria Group, Inc. v. Good*, 555 U.S. 70 (2008).  There the Supreme Court considered a claim brought by smokers against cigarette manufacturers.  Statements on the labels indicated that "Light" cigarettes delivered less tar and nicotine.  *Id*. at 72.  The complaint alleged that the manufacturers knew that was untrue and claimed the manufacturers violated the state unfair trade practices law by concealing information and making affirmative misrepresentations.  *Id*. at 74.  The manufacturers argued the claims were expressly preempted.  *Id*.  The applicable preemption clause prevented states from imposing any "requirement or prohibition" with "respect to the advertising or promotion of cigarettes" "based on

_____

[14] Plaintiffs focus on the omission of § 343(a) from the list of provisions in § 343-1 that expressly preempt state law.  *See, e.g.*, *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 370 (N.D. Cal. 2010).  But this is not the end of the inqury.  The text of § 343-1(a)(2) and (3) limits what requirements the state may enforce about the product's name or placement of information on the label to the requirements of "such section," meaning § 343(f) or (i).

smoking and health" which were labeled in conformity with federal provisions requiring certain warnings.  *Id*. at 78-79 (quoting 15 U.S.C. § 1334(b)).

The Justices disagreed about the test for determining the scope of the preemption clause.  The dissent urged a test that did not focus on the ultimate source of the legal duty, but rather its "proximate application."  *Id*. at 95 (Thomas, J., dissenting).  The proximate application test focuses on "the effect of the suit on the . . . manufacturer's conduct."  *Id*.  If "whatever the source of the duty, [the claim] imposes an obligation . . . because of the effect of smoking upon health, it is preempted."  *Id*.

The Court rejected the proximate application test in favor of an inquiry into "the legal duty that is the predicate of the common-law damages action."  *Id*. at 81.  The Court held the phrase " 'based on smoking and health' fairly but narrowly construed does not encompass the more general duty not to make fraudulent statements."  *Id*. at 87 (quoting 15 U.S.C. § 1334(b)); *see also Paduano v. Am. Honda Motor Co.*, 169 Cal. App. 4th 1453, 1478, 88 Cal. Rptr. 3d 90, 111 (Cal. Ct. App. 2009) (holding "laws of general application that create a duty not to deceive" were not within scope of preemption clause encompassing requirements "on disclosure of fuel economy or fuel operating costs").

In this case, the predicate legal duty that Plaintiffs want to enforce is the state law mirroring the more general federal requirement to refrain from making a

statement on a juice label that is false or misleading. The structure of the statute makes plain that such a requirement is of a different type, and therefore is not preempted.

Section 343 defines misbranded food in terms of twenty-three separate categories. Regulations set specific requirements for each category, though there is undoubtedly some overlap between the content of the name and the placement of information. The requirements "of the type required by" § 343(f) and (i) concern the "common or usual name of the food" and the prominence of the display.

The challenge that this label is "false or misleading" is the parallel enforcement of a requirement of a different type. Section 343(a)(1) is unlike the rest of the categories in § 343. It "condemn[s] every statement, design, and device which may mislead or deceive." *United States v. Ninety-Five Barrels (More or Less) Alleged Apple Cider Vinegar*, 265 U.S.438, 443 (1924). Its distinct function in the statutory framework is to address false or misleading labels when the FDA has not set specific requirements addressing the challenged aspect of the name, the placement of information, or any other category of requirements. *See Food Labeled Nuclomin*, 482 F.2d at 583; *Zupnik*, 2010 WL 6090604, at *2. As the FDA explained when promulgating § 102.33, "this provision does not relieve the manufacturer of the obligation to label the product in a truthful and nonmisleading manner." 58 Fed. Reg. at 2920. Section 343(a)(1) is the source of that obligation.

As in *Altria*, this is a more general obligation to refrain from deceptive conduct. By its terms, the express preemption provision does not bar the enforcement of state laws imposing requirements of *that* type—that is, a state-law mirror of the requirement in § 343(a)(1) addressing false or misleading labels. Fairly but narrowly construed, § 343-1(a) does not prohibit Plaintiffs from asserting a claim premised on a violation of § 343(a)(1).

The ability to bring such a claim is not unlimited. The FDA regulations describe how a product might comply. Some mandate conduct. Some prohibit conduct. Others permit but do not require conduct. As explained, if there is compliance with a specific requirement, then that aspect is not false or misleading under the catch-all provision, § 343(a)(1).

Such compliance also brings the conduct within the preemptive reach of the statute. In circumstances where challenged conduct is expressly required or permitted by FDA regulations, the claims fall within the core of the preemption provision because they would "impose different requirements on precisely those aspects . . . that the FDA had approved." *Altria*, 555 U.S. at 86 (discussing *Riegel*, 552 U.S. at 328). A good example is *Red v. The Kroger Co.*, No. CV 10-01025 DMG MANX, 2010 WL 4262037 (C.D. Cal. Sept. 2, 2010), where the court held that "[b]ecause Plaintiffs challenge the use of terms that the FDA, through its regulations, has defined and permitted, Plaintiffs' claims fall with the scope of the

FDA's preemption clause." *Id*. at *7; *see also Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012) (holding claims preempted where plaintiffs sought "to enjoin and declare unlawful the very statement that federal law permits and defines" because "[s]uch relief would impose a burden through state law that is not identical to the requirements under section 343(r)"); *Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1119 (C.D. Cal. 2010) ("Plaintiff's claims seek to enjoin the use of the very term permitted by the NLEA and its accompanying regulations. Plaintiff's claims must therefore fail because they would necessarily impose a state-law obligation for trans fat disclosure that is not required by federal law.").

Here, Plaintiffs' claims premised on § 343(a)(1) point to a representation on the label, the term "100%" that is not required or authorized. Its placement close to "Cranberry Pomegranate" in the same size type makes it likely the consumer would read them together as one statement indicating the product is entirely cranberry and pomegranate juice. This is arguably false or misleading. Such a claim is outside the preemptive reach of the statute.[15]

---

[15] In *Bell v. Campbell Soup*, the court considered similar facts. In *Bell*, all of the statements on the principal display panel were accurate and individually authorized by specific requirements in the FDA regulations. The plaintiffs challenged the size and placement of information on the label without showing a violation of any specific requirement and asserted the label was misleading. The court held those claims preempted, essentially applying the proximate application test. The court said that plaintiffs' claims were a requirement to place statements elsewhere or phrase them differently, and those were "of the type required by" § 343(f) and (i). 2014 WL 6997611, at *4. This Court adopts a different test than *Bell* to determine the

The evident purpose of the NLEA supports that conclusion. "[A]ny understanding of the scope of a pre-emption statute must rest primarily on 'a fair understanding of congressional purpose.' " *Lohr*, 518 U.S. at 485-86 (quoting *Cipollone v. Liggett Group. Inc.*, 505 U.S., at 530, n.27 (opinion of Stevens, J.)). The purpose of the NLEA is to establish "[n]ational uniform nutrition labeling." *See* 21 U.S.C. § 343-1. It was plainly intended to avoid state-by-state variations in substantive standards. It exists to prevent the "disuniformity that would arise from the multitude of state laws, state regulations, state administrative agency rulings, and state-court decisions" foreclosed by the statute. *See Pom Wonderful*, 134 S. Ct. at 2239. Put simply, it is "not for each State to go about its own way." 136 Cong. Rec. S16607-02, 1990 WL 206648 (Statement of Sen. Hatch).

For example, one of the matters covered by § 343-1(a) is the requirement "of the type required by" § 343(i), concerning the name of the food. The FDA has explained that "a State common or usual name regulation promulgated . . . for a food for which there is no specific Federal common or usual name regulation is preempted." State Petitions Requesting Exemption from Federal Preemption, 58 Fed. Reg. 2462-01, 2463 (Jan. 6. 1993). This is so because such a state law standard "would be a requirement of the type required by section [343(i)(1)], but it

---

preemptive scope of the statute. But the outcome in *Bell* would likely have been the same under the predicate legal duty test. It is doubtful there was any basis to find that label misleading under § 343(a)(1) or outside the scope of the NLEA's preemption provision.

would not be identical to the provisions that FDA has adopted under that section."
*Id*. A state-law requirement prohibiting what the regulation requires or authorizes
would suffer the same fate.

At least one court has said that "[t]o construe § 343(a) to permit any state to
authorize plaintiffs to sue for any alleged mislabeling of a juice drink would
eviscerate the strict preemption requirements of § 343–1." *Gorenstein v. Ocean
Spray Cranberries, Inc.*, No. CV 09-5925 GAF CWX, 2010 WL 10838229, at *1
(C.D. Cal. Jan. 29, 2010). The claims in *Gorenstein* appear similar to *Bell* in the
sense that there was nothing more than regulation-compliant conduct; the plaintiff
admitted that "the challenged labels meet federal requirements" but sought to
impose further requirements under § 343(a)(1). *Id*. With nothing beyond
permitted conduct, there was no basis for a § 343(a)(1) violation, and thus nothing
to survive a preemption defense. But the concern that parallel § 343(a)(1) claims
would swallow the NLEA's preemption clause ought to be addressed.

A state-law claim premised on a violation of § 343(a)(1) does not sanction
inconsistent state-law substantive standards. The misbranding provision in
§ 343(a)(1) is a federal statute setting a national standard. Courts hearing such a
parallel action are interpreting federal law. Its application "by judges and juries in
courts throughout the country may give rise to some variation in outcome." *See
Pom Wonderful*, 134 S. Ct. at 2239. But the states can only provide a *remedy* for a

violation of that national standard as defined in regulation and applied in specific instances.  The states cannot *change* the standard.  *See Bates*, 544 U.S. at 447.  Whatever variation in outcome might result is ultimately based on a question of federal law.  So in no sense does allowing a state-law claim premised on a violation of § 343(a)(1) unleash the mischief Congress sought to prevent with the NLEA.

In general, state-law parallel claims do not frustrate the goal of national uniformity; they advance it.  *Bates*, 544 U.S. at 451.  That furthers the FDCA's aim "to enable purchasers to buy food for what it really is."  *Ninety-Five Barrels*, 265 U.S. at 443.

With the understanding that it only can only prohibit conduct that is not required or authorized by more specific provisions, this Court concludes that the legal duty imposed by § 343(a)(1) and state law mirroring it is not "of the type required by" § 343(i) or (f).  So it is outside the scope of the preemption provision in § 343-1(a).  Plaintiffs' state-law claims premised on such a duty are not preempted.

### D. Sufficiency of Pleadings

A properly alleged parallel claim sets forth facts pointing to specific federal requirements that have been violated.  *Wolicki-Gables*, 634 F.3d at 1301.  Those facts must be "specifically stated in the initial pleadings."  *Id*.

The complaint describes the facts underlying potential violations of the federal statute and regulations, namely that the label indicates the beverage is entirely cranberry and pomegranate when it is not. And it alleges this product violates "the FDCA and regulations promulgated thereunder," specifically referencing 21 U.S.C. § 343. ECF No. 1 ¶¶12, 51, 97.

Plaintiffs have thus alleged facts in their complaint demonstrating the presence of the elements of parallel claims. *See Wolicki-Gables*, 634 F.3d at 1302. As to those aspects of Wal-Mart's affirmative preemption defense, the motion to dismiss will be denied.

The parallel claims are premised on alleged violations of § 343(a) and (i). To the extent the complaint might be construed to assert a broader theory with respect to the labeling of the juice, and thus a nonidentical requirement under state law, such a claim is preempted. So the motion to dismiss will be granted in part.

## V. Plaintiffs otherwise state claims

Wal-Mart argues that the complaint fails to state a claim even if there is no preemption. This Court does not agree.

Wal-Mart argues that Counts I and IV fail to state either a FDUTPA or unjust enrichment claim because the conduct is permitted by federal law. FDUTPA's safe-harbor provision says that FDUTPA does not apply to "[a]n act or practice required or specifically permitted by federal or state law. § 501.212(1),

Fla. Stat. It appears undisputed that if an act or practice is permissible and required by federal law it "cannot be misconduct that would give rise to unjust enrichment." *See Brett v. Toyota Motor Sales, U.S.A., Inc.*, No. 608CV-1168-ORL-28GJK, 2008 WL 4329876, at *8 (M.D. Fla. Sept. 15, 2008).

These arguments are the other side of the preemption issue. If the conduct is required or specifically permitted under federal law, the claim is preempted, FDUTPA does not apply, and as a matter of law any enrichment is not unjust. But where the alleged conduct may violate federal law, it is not preempted, FDUTPA might well apply, and the enrichment might be unjust.

Here there is an alleged violation of the federal regulations. So neither the safe-harbor provision of FDUTPA nor the holding in *Brett* is a basis for dismissal of Counts I and IV. And because the FDUTPA claim goes forward, it is not necessary to dismiss the unjust enrichment claim. *See Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1342 (S.D. Fla. 2011).

Under Florida law, the general rule is that if adequate legal remedies exist, equitable remedies are not available. *See Williams v. Bear Stearns & Co.*, 725 So. 2d 397, 400 (Fla. 5th DCA 1998). That rule does not apply to unjust enrichment claims until the existence of an express contract is shown. *See ThunderWave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1566 (S.D. Fla. 1997) (citing *Hazen v. Cobb–Vaughan Motor Co.*, 117 So. 853 (Fla. 1928), and *Garcia v. Cosiche*r, 504

So. 2d 462, 463 n. 2 (Fla. 3d DCA 1987)).  Defendant has not conceded the

existence of an express contract.  Dismissal of Count IV because of available legal

remedies is premature.

Wal-Mart says that the warranty claims, Counts II and III, must be dismissed

because Plaintiffs "did not aver the existence of pre-suit notice."  ECF No. 12 at

26.  The complaint alleges that "[a]ll conditions precedent to Defendant's liability

under this contract, including notice, have been performed by Plaintiffs and the

class."  ECF No. 1 ¶114.  It "suffices to allege generally that all conditions

precedent have occurred or been performed."  Fed. R. Civ. P. 9(c); *see also* ECF

No. 18 at 45.

Lastly, Wal-Mart asks for dismissal of Plaintiffs' claims for punitive and

treble damages.  Plaintiffs concede that these are not recoverable forms of relief.

This Court will treat that part of the motion to dismiss as an unopposed motion to

strike.  The request for punitive and treble damages in the complaint will be

stricken.

## VI. Conclusion

For these reasons,

**IT IS ORDERED**:

Defendant's motion to dismiss, ECF No. 12, is **GRANTED** in part and

**DENIED** in part, as stated.  Part II.E of ECF No. 12, which is treated as a motion

to strike Plaintiffs' demand for punitive and treble damages, is **GRANTED**.

**SO ORDERED on April 23, 2015.**

**s/Mark E. Walker**
**United States District Judge**
